**Bettie Jo CHERRY, Plaintiff-Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendants-Appellees.**

No. 84–8335.

United States Court of Appeals, Eleventh Circuit.

May 20, 1985.

Deborah Whitmore Hicks, Barnesville, Ga., for plaintiff-appellant.

Frank L. Butler, III, Asst. U.S. Atty., Macon, Ga., Chris Bradfield, Asst. Regional Atty., Atlanta, Ga., for defendants-appellees.

Before RONEY and HENDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

ALBERT J. HENDERSON, Circuit Judge:

Bettie Jo Cherry appeals from a judgment of the United States District Court for the Middle District of Georgia upholding a final decision by the Secretary of Health and Human Services (Secretary) denying her claim for disability insurance benefits under the Supplemental Security Income program, 42 U.S.C. §§ 1381 *et seq.*, and the Disability Insurance Benefits program, 42 U.S.C. §§ 401 *et seq.* We reverse and remand.

In September and October, 1979, Cherry applied for Disability Insurance Benefits and Supplemental Security Income (SSI), alleging she suffered from arthritis, bursitis, phlebitis, high blood pressure and accompanying pain. After a hearing, an administrative law judge (ALJ) determined on October 16, 1980, that she was not disabled. The Appeals Council denied review and Cherry declined to pursue the matter further.

On January 27, 1981, Cherry filed a second application for disability benefits and SSI, claiming she still suffered from the ailments alleged in her previous application as well as from nerves, headaches and kidney problems. An ALJ conducted a hearing and allegedly declined to reopen her 1979 application. He also determined that, despite her exertional impairments, she could perform unskilled sedentary work and suffered from no nonexertional impairments which would prevent her from doing such work. The ALJ then applied the medical-vocational grids to conclude that she was not disabled. After the Appeals Council denied review she filed this action in district court.

While the matter was pending, Cherry presented new evidence to the district court and the Appeals Council consisting of a

medical report and answers to interrogatories by Dr. R.A. Maierhofer establishing that she suffered from significant psychological disorders. The Appeals Council pointed out that because a complaint had been filed in the district court it could not receive the evidence, but declared that the new information would not alter its conclusion. The district court subsequently affirmed the Secretary's determination that Cherry was not disabled and declined to remand the case for consideration of the new evidence.

On appeal, Cherry urges that the Secretary reopened her 1979 application by considering evidence of her disability prior to October 16, 1980, or, alternatively, that the Secretary erred by not reopening the first application. She also contends that the ALJ presiding over her second hearing failed to adequately develop facts with respect to her supposed drug addiction and psychological disorders, and that the finding that she is capable of doing unskilled sedentary work is not supported by substantial evidence. Finally, she claims that the case should be remanded for consideration of the new medical evidence and that she should be awarded costs and attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(B).

I. Reopening the 1979 Application.

■■■ A final decision by the Secretary will be deemed reopened if it is "reconsidered on the merits to any extent and at any administrative level." *McGowan v. Harris*, 666 F.2d 60, 65 (4th Cir.1981). Although the ALJ considering Cherry's second application for benefits reviewed evidence of her alleged disability before October 16, 1980, the date the decision denying her first claim became final, we do not believe this constituted a reopening. As the *McGowan* court stated:

[W]hen a social security claimant presents any claim that is arguably the same one earlier denied on the merits, the Secretary must in fairness look far enough into the proffered factual and legal support to determine whether it is the same claim, and if so, whether it should nevertheless be reopened as a discretionary matter.

*Id.* at 67. Our evaluation of the administrative proceedings indicates that the ALJ engaged in precisely this sort of analysis. After reviewing all the evidence, including that presented in support of the original application, the ALJ reasoned that there was insufficient new and material evidence to justify a reopening under the regulations. *See* 20 C.F.R. §§ 404.988, 404.989 (conditions for reopening). Accordingly, the ALJ concluded that the second application for benefits would be denied under the doctrine of res judicata to the extent it alleged disability before October 16, 1980. The ultimate determination that Cherry was not disabled after that date was not based on the record of the prior proceeding. *Cf. Brown v. Heckler*, 565 F.Supp. 72 (E.D.Wisc.1983) (ALJ reopened prior application when he did not apply res judicata and based his ultimate disability determination on a review of the record of the prior application).

■ Alternatively, Cherry contends that the Secretary erred in not reopening the 1979 application. The decision not to reopen a previous application is not subject to judicial review "unless that refusal is challenged on constitutional grounds." *Howard v. Califano*, 590 F.2d 137, 138 (5th Cir.1979) (per curiam);[1] *see Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). The grounds alleged must be "colorable" in order to confer subject matter jurisdiction. *See, e.g., Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Gipson v. Harris*, 633 F.2d 120, 122 (8th Cir.1980).[2]

---

**1.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

**2.** The judicial review provision of Title 42 states that "[a]ny individual, after any final decision of

the Secretary made *after a hearing* to which he was a party ... may obtain a review of such decision by a civil action commenced within sixty days...." 42 U.S.C. § 405(g) (emphasis added). In determining that the Secretary's decision not to reopen a prior application is not

██ Cherry argues that the Secretary's decision not to reopen her prior application was made in a manner which deprived her of her procedural due process rights. Specifically, she alleges that the Secretary made the decision without the benefit of the transcript of the original administrative hearing and without adequately developing evidence of her purported drug addiction and mental impairments.[3]

██ These constitutional claims are sufficiently "colorable" to bestow subject matter jurisdiction on this court.[4] Compare Gipson, 633 F.2d at 122 (constitutional claim sufficiently colorable) with Howard, 590 F.2d at 138 (no colorable constitutional issue raised). In determining whether there is a substantive violation of due process, the Supreme Court directs attention to three factors:

[F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Eldridge, 424 U.S. at 335, 96 S.Ct. at 903, 47 L.Ed.2d at 33.

The private interest affected by the Secretary's reopening procedure is Cherry's right to disability benefits from June, 1979, the onset date alleged in her first application, see Record, vol. 2 at 76, 168, to October 16, 1980, the date the original decision acquired res judicata effect.[5] There is no question that this is a significant interest since an incorrect decision not to reopen would completely foreclose her opportunity to obtain these benefits. See Shrader v. Harris, 631 F.2d 297, 301 (4th Cir.1980) (procedural due process violated in part because claimant's interest was avoiding total, irrevocable deprivation of benefits); cf. Eldridge, supra (no due process violation in part because claimant's interest confined to avoiding suspension of payments between termination and a post-termination hearing).

██ We do not perceive, however, a significant risk of an erroneous deprivation of this interest through the procedures actually employed by the ALJ. Procedural due process requires only an opportunity to be heard "at a meaningful time and in a meaningful manner." Eldridge, 424 U.S. at 333, 96 S.Ct. at 902, 47 L.Ed.2d at 32. Cherry

---

generally subject to judicial review the Sanders Court focused on the fact that such decisions are typically made without a hearing. The Court distinguished Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), which accorded judicial review in the absence of a hearing, on the ground that they involved constitutional challenges to the Secretary's actions. Therefore, we may judge the sufficiency of the constitutional claim to confer jurisdiction in a case involving a decision not to reopen by referring to Eldridge, Salfi and their progeny.

3. Cherry's allegation that the Secretary failed to adequately investigate her drug addiction and psychological problems forms the basis for her contentions that she was deprived of a fair hearing on her first application, her second application, and her request for reopening. The alleged infirmities forming the basis for her first application are not properly before us because of her failure to appeal the Secretary's final decision.

4. A constitutional claim relating to the first application is insufficient to confer subject matter jurisdiction over this appeal of the reopening decision. The constitutional issue must concern the proceeding at which the decision not to reopen was made. Otherwise, constitutional claims arising out of an administrative proceeding could be preserved indefinitely through requests to reopen.

In Shrader v. Harris, 631 F.2d 297 (4th Cir. 1980), in holding that an ex parte dismissal on res judicata grounds of an application for disability benefits violated due process, the court assumed for the purposes of the appeal that the alleged error in the original proceedings existed. Id. at 301. Similarly, we assume without deciding that evidence of Cherry's alleged drug addiction and mental impairments would constitute "good cause" for reopening under the regulations.

5. In addition, reopening would permit consideration of pre-October 16, 1980 evidence of Cherry's alleged disability in determining her right to benefits after that date.

was represented by counsel at an administrative hearing and had the opportunity to present all information relevant to the reopening decision, as well as the right to appeal.

The Secretary's failure to further investigate Cherry's claims of drug addiction and mental problems did not deprive her of this meaningful opportunity. She did not list drug dependence as an impairment before the ALJ. Although there was a considerable amount of evidence that she took a variety of medications,[6] there is no indication in the record of addiction. To the contrary, for example, the evidence reveals that she recently significantly reduced her intake of Valium, conduct inconsistent with dependency on that drug.[7]

Nor did the Secretary's failure to order a psychiatric examination of Cherry in light of information suggesting mental impairment deprive her of due process. The evidence before the ALJ indicated that she suffered from nervousness and depression, and had once contemplated suicide.[8] However, Cherry also testified that she was treated by Dr. Holloway for her nerves and depression and had improved to some extent. Record, vol. 2 at 62, 71. Although she maintained to the ALJ that her nerve problems were substantial,[9] Dr. Holloway did not list nervousness as part of his diagnosis in a medical report prepared for a state agency on January 29, 1981.[10] In addition, Dr. E. Montero examined Cherry and reported no impairment of her mental faculties.

In *Ford v. Secretary of Health and Human Services*, 659 F.2d 66, 69 (5th Cir. Unit B 1981),[11] the court held that the ALJ deprived the claimant of a fair hearing by failing to order a psychiatric exam. The court based this conclusion in part on the fact that the ALJ made no specific finding concerning the degree of the claimant's mental impairment and on the lack of any medical evidence contradicting her assertion of a mental ailment. By contrast, the ALJ in this case specifically found that Cherry did not suffer from a significant mental problem. Although at the time of the second administrative proceeding she had not been examined by a psychiatrist,[12] her own treating physician did not diagnose a psychological ailment, and a separate examining doctor stated that there existed no significant mental impairment. Under the circumstances, we do not believe the Secre-

---

**6.** The evidence before the ALJ indicates that Cherry is taking or has taken diet pills, kidney pills, a blood thinning drug, blood pressure pills, three different pain medications, Valium, Adapin, a tonic liquid, Tranzine, two sinus drugs, fluid pills and "compound tablets" to dull pain. Record, vol. 2 at 33–34, 44–54.

**7.** In *Cowart v. Schweiker*, 662 F.2d 731 (11th Cir.1981), we recognized that an ALJ may have a duty to investigate possible side effects of medications taken by a social security claimant. *Id.* at 737. The claimant in *Cowart* was unrepresented and had not waived her right to counsel. She asserted that the side effects contributed to her disability and testified that as a result of taking her drugs she was "kind of zonked most of the time." *Id.* Cherry, however, was represented at the hearing and did not allege that side effects of drugs contributed to her disability. Moreover, the only indication in the record of side effects is her statement before the ALJ that her medication made her drowsy. Record, vol. 2 at 64. Under the circumstances, the ALJ's failure to inquire further into possible side effects did not deprive her of a meaningful opportunity to be heard.

**8.** Cherry testified before the ALJ that she had a nervous breakdown in May, 1981. Record, vol. 2 at 51, 61. She also stated that she once thought about suicide in 1978, but did not attempt it and never sought treatment at a mental health clinic. *Id.* at 71.

**9.** Cherry once described her nervousness as follows:

My nerves are more severe and I feel like screaming and some nights I cannot sleep and my stomach quivers inside and I start shaking all over not quite every day.

Record, vol. 2 at 207. During the hearing she claimed that her nerves precluded her from driving. *Id.* at 67.

**10.** The report does, however, note the patient's mood as "depressed." Record, vol. 2 at 229.

**11.** In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982), the Eleventh Circuit adopted as precedent all decisions of Unit B of the former Fifth Circuit.

**12.** Neither Dr. Holloway nor Dr. Montero is a psychiatrist.

tary was obligated to order a psychiatric evaluation to ensure Cherry a meaningful hearing.[13]

■ The lack of a transcript of the original administrative hearing also posed no significant risk of an erroneous deprivation of Cherry's interests. The evidence from the hearing is required to be recited in detail in the ALJ's written decision. *See* 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.953; *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981). The risk of error exists only when the ALJ's opinion inadequately or improperly relates the crucial details of the case and when the claimant has declined to appeal the administrative proceeding to remedy the error and has failed to submit evidence at the subsequent proceeding concerning the true nature of the original proceeding.[14]

The third factor is the burden imposed on the government by changing the procedures actually employed. Here, this burden would be substantial. The Secretary would be required to investigate matters which may contribute to a disability determination when the claimant has not alleged them or made an adequate prima facie showing of their existence. Similarly, requiring the Secretary to preserve all transcripts of all administrative hearings in the event of a later request for reopening is a significant burden.[15] *See Gosnell v. Secretary of Health and Human Services*, 703 F.2d 216, 218–19 (6th Cir.1983) (Secretary's inability to find files pertaining to prior applications not a violation of claimant's right to due process in reopening proceedings).

From the foregoing, we conclude that although the Secretary could have taken additional steps to ensure the correctness of the reopening decision, Cherry was not deprived of procedural due process. As a result, the Secretary's decision not to reopen her prior application must be upheld.

## II. New Evidence.

■ Cherry next urges that the case be remanded to the Secretary so that she may present additional evidence consisting of a medical report by Dr. R.A. Maierhofer and his answers to a series of interrogatories. To justify a remand, the claimant must show that there is "good cause" for her failure to offer the evidence at the administrative level and that there is a reasonable possibility that the evidence would change the outcome. *See* 42 U.S.C. § 405(g); *Wright v. Heckler*, 734 F.2d 696, 697 (11th Cir.1984) (per curiam); *Allen v. Schweiker*, 642 F.2d 799, 802 (5th Cir. Unit B 1981) (per curiam).

■ Good cause for failing to present evidence earlier may exist where, as here, the evidence did not exist at the time of the administrative proceeding. *See e.g., Burton v. Heckler*, 724 F.2d 1415, 1418 (9th Cir.1984). The Secretary appears to concede this point, instead arguing only that the new evidence is not sufficiently material. *See* Brief for Appellee at 27–31.

■ Dr. Maierhofer interviewed Cherry on May 20, 1982, and administered intelligence, achievement, perceptual motor and personality tests. His report states that Cherry's I.Q. of 76 places her in the borderline intellectual range. It also relates that although she can understand directions and work without supervision, she is very slow in doing even simple repetitive tasks, has trouble correctly evaluating a situation and

---

**13.** Our consideration of the Secretary's obligation to further investigate Cherry's allegations of drug addiction and mental impairment has thus far been confined to our review of the decision not to reopen her previous application. Applying the same reasoning, however, we also conclude that there is no independent need to remand this case for further inquiry into these issues.

**14.** Because we find no significant risk of depriving Cherry of her interest through the procedures actually employed, any additional procedural safeguards would be of minimal value.

**15.** The regulations provide that the administrative law judge "shall make a complete record of the hearing proceedings." 20 C.F.R. § 404.951. Even if this regulation was violated by the failure to *preserve* the record for future reopening determinations, the violation would not constitutionally flaw the proceedings.

thinking through a task in a sequential manner, and possesses poor abstract thinking skills.

As for her achievement skills, the report notes that her language and math skills are adequate for day-to-day functioning, but that her score on a Wide Range Achievement Test places her in the lower end of the average range. According to the report, her perceptual motor tests revealed no evidence of any organic problems and no substantial difficulties in drawing designs, although she did exhibit some trouble in concentrating.

The most important aspect of Dr. Maierhofer's report is his evaluation of Cherry's personality. The report describes her as "psychologically disturbed to the extent that she has trouble in dealing with reality and she often engages in ... autistic thinking. Much of the time her thinking is psychotic." Record, vol. 1 at 45. Dr. Maierhofer concluded that her personality test results were "both valid and reliable" and that he did not believe she was malingering. *Id.* at 45–46. He diagnosed her as suffering from schizophrenia, schizo-affective type, and depression, *id.* at 46, and stated in response to one of the interrogatories that this condition "would preclude her from managing sustained employment." *Id.* at 53.[16]

This new evidence is the product of what is apparently the only comprehensive psychological evaluation of Cherry's mental condition. The information is not substantially contradicted by the existing record. Most of the evidence presented to the Secretary concerning Cherry's mental condition involved her nerve problems,[17] an ailment hardly comparable to schizophrenia and borderline intellectual skills. Moreover, the evidence before the Secretary indicating that Cherry suffered from no behavior or language problems, *see, e.g.,* Record, vol. 2 at 199, 211, is consistent with Dr. Maierhofer's observation that her language skills were adequate and his admonition that her psychological symptoms would not be obvious during normal interaction. *See* Record, vol. 1 at 50–52. Dr. Montero's statement that there was no impairment of her mental faculties appears to contradict Dr. Maierhofer's report but is not based on a thorough evaluation of Cherry's personality.[18]

The new medical evidence certainly suggests the existence of a nonexertional impairment sufficiently significant to preclude a mechanical application of the medical-vocational grids. It is at least true that, if considered by the Secretary, there is a reasonable possibility that the new evidence would change the administrative outcome.

Our conclusion is not altered by the Appeals Council's statement that the new evidence would not ultimately change the decision reached in this case. The Secretary is required to include in the certified record all the evidence formally considered. *See* 42 U.S.C. § 405(g). A reviewing court is limited to this record in examining the evidence. *See Mann v. Gardner,* 380 F.2d 182, 187 (5th Cir.1967). Because the Secretary did not include Dr. Maierhofer's report

---

**16.** Dr. Maierhofer also characterized the impairment of Cherry's ability to relate to other people as "moderately severe," and found her ability to perform work requiring frequent contact with others to be "poor." Record, vol. 1 at 48. In addition, he stated that "if anything, her functioning is deteriorating." *Id.* at 49.

**17.** *See e.g.,* Record, vol. 2 at 41, 51, 61–62, 67, 69, 207, 220.

**18.** Dr. Montero is not a psychiatrist and apparently specializes in anesthesiology and pulmonary diseases. *See* Record, vol. 2 at 244. His entire evaluation of Cherry's mental condition consists of the following:

The patient states that she is very nervous, that she has crying spells, that she becomes shakey with the least provocation. She had been on Traxene and on Valium. About eight years ago she thought that she had had a nervous breakdown, the details of which are rather cryptic. There have been no hospitalizations in a psychiatric hospital, consultation with psychiatrists, nor has there been impairment of her mental faculties. Her memory is good. She manages her own affairs without difficulty.

*Id.* at 232. There is no indication in the record that he conducted a psychiatric exam as comprehensive as that of Dr. Maierhofer.

in the certified record, the statement concerning its materiality is advisory, at best. Furthermore, the judicial determination whether remand is necessary is a *de novo* proceeding. *See Booz v. Secretary of Health and Human Services*, 734 F.2d 1378, 1380 (9th Cir.1984) (materiality of new evidence is a question of law). According any weight at all to the Secretary's advisory statement would violate this principle.[19]

The judgment of the district court is REVERSED and the case REMANDED to the district court with directions to remand the case to the Secretary for consideration of the new medical evidence.

---

**19.** In *Wesley v. Secretary of Health, Education and Welfare*, 385 F.Supp. 863 (D.D.C.1974), the Appeals Council similarly declined to reopen the record to consider certain additional medical evidence and stated that it would not change its decision since the new information did not substantially differ from other medical evidence available at the administrative hearing. The district court based its refusal to remand on the Council's declaration, the fact that the new evidence was cumulative, and its view that substantial evidence nonetheless existed in favor of the finding to which the new information was relevant. *Id.* at 866–67. To the extent the *Wesley* court grounded its holding on the Appeals Council's advisory assertion, we decline to adopt its holding.

Cherry's claim for attorney's fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(B), is without merit because she has not obtained a final judgment against the United States. Because we remand the case for reconsideration, we need not address Cherry's remaining arguments.