Charles **TURPIN**, Appellant,

v.

Otis R. **BOWEN**, Appellee.

No. 86–1852.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 13, 1987.
Decided March 6, 1987.

Dewey L. Crepeau, Columbia, Mo., for appellant.

Joseph B. Moore, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before ARNOLD, JOHN R. GIBSON, and MAGILL, Circuit Judges.

MAGILL, Circuit Judge.

Charles Turpin appeals from a district court order granting summary judgment in favor of the Secretary of Health and Human Services in an action brought by Turpin challenging the Secretary's denial of disability benefits under 42 U.S.C. §§ 416(i), 423 (1982). The Secretary based the denial on findings that Turpin had no severe impairment and was capable of returning to his past relevant work. We reverse and remand for further evaluation of Turpin's claim.

## I. BACKGROUND.

Turpin applied for disability benefits on September 4, 1984, alleging that he was disabled since July 9, 1984, because of chest pain, breathing problems, throat problems and arthritis. The Secretary denied Turpin's application initially and on reconsideration. On June 24, 1985, following a hearing, an Administrative Law Judge ("ALJ") denied Turpin's claim. On August 12, 1985, after considering additional evidence, the Appeals Council denied Turpin's request for review, and therefore, the ALJ's decision stands as the final decision of the Secretary. Turpin subsequently sought review of the ALJ's decision in district court pursuant to 42 U.S.C. § 405(g). The court referred the matter to the United States Magistrate, who filed a report recommending that the Secretary's motion for summary judgment be granted and Turpin's motion for summary judgment be denied. On June 17, 1986, the district court entered an order adopting the Magistrate's Report and Recommendations and granting the Secretary's motion.

Turpin was sixty years old at the time he applied for benefits. He has a sixth-grade education and has engaged in physical labor for at least thirty-five years. Turpin worked for the same company for thirty-three years, mainly as a pipe fitter, but also as a maintenance person, construction worker, crane operator, and brick layer. Turpin's job had a 100–pound lifting limit, and Turpin reported that he frequently lifted or carried loads of up to 50 pounds. Additionally, Turpin reported that the job required him to walk and/or stand between 40–80% of the workday and involved constant bending. Turpin last worked at the company on July 6, 1984, the onset date of his alleged disability. He subsequently was on sick leave status until his retirement from the company with a disability pension, effective January 1, 1985.

Turpin and his sister-in-law, Ruth Case, who lived with Turpin for sixteen months, testified at the hearing before the ALJ. Turpin, who was represented by counsel, testified that he had back problems, stomach problems, arthritis in his legs and arms, pain in his right hand which he broke in 1980, and that he passes out if he moves his head to the right. He testified that these conditions prevented him from working at his former position. Turpin also stated that he takes a number of medications daily for these problems.[1] Turpin testified that he only leaves home to go to church, to buy groceries, and to get more medication, and that he cannot drive for more than two hours at a time. He stated that he can do the dishes without stopping, but that he frequently has to rest between doing household chores, and he cannot mow the lawn.

Miss Case agreed with Turpin's testimony, except she stated that she had seen him not able to finish doing the dishes because of stomach pain. She also recalled an incident in November 1984 when Turpin was brought home from work, apparently because of passing out. She testified that Turpin appeared "out of it. He didn't hardly know where he was at. We had to get a doctor and get him to a hospital. He had chest pains."

---

1. Turpin indicated that he takes the following prescriptive medications: Reglan and Tagamet, before meals and at bedtime, for his stomach and throat problems; Enduronyl daily for his high blood pressure; Nawfon for his arthritis; and Decadron spray for burning sensations in his nose and throat. He also stated that he takes Pepto Bismol for his stomach and ulcer, and Pertusion for his cough.

The record contains several medical reports relating to treatment before the alleged onset of disability. Turpin's treatments were rather unremarkable until he was hospitalized in March of 1983,[2] the first in a series of three hospitalizations brought on by Turpin's complaints of, among other things, chest pain and neck discomfort. Benjamin N. Jolly, M.D., a general practitioner and a specialist in general surgery, was Turpin's treating physician for all three hospitalizations. The first period of hospitalization was from March 28 through April 3, 1983. Turpin complained of chest pain, a severe cough, sinus problems and mouth soreness. An EKG revealed sinus rhythm and minimal nonspecific T-wave change. X-rays revealed pneumonitis. Turpin was treated with antibiotics, responded slowly, and was discharged.

Turpin's next hospital stay was from September 11 through September 17, 1983, due to complaints of burning of the face along his gums and considerable pain and discomfort in his neck. X-rays showed a "considerable" amount of cervical spondylosis. Turpin was also diagnosed as having sinusitis. He was treated and discharged with improved results.

Turpin was also hospitalized from October 19 through October 28, 1983, after having passed out two or three times at work, and also because of complaints of pain in his neck and shoulders. X-rays again revealed cervical spondylosis. Additionally, Turpin was diagnosed as having syncope (temporary suspension of consciousness), etiology unknown. Turpin's heart and chest functions appeared to be normal, although another physician indicated that there was some turbulence in either the right or left carotid artery. Medical records from this period showed that Turpin's blood pressure, at various intervals, was 120/74, 180/94, 200/90, 184/90, and 164/80.

The record also shows that Turpin was treated for various problems after the alleged onset of disability. In a report signed September 25, 1984, Turpin's treating physician, Dr. Jolly, stated that he last saw Turpin on August 27, 1984, at which time he diagnosed him as having obstructive lung disease. Turpin's x-rays accompanied the report.[3] In the same report, Dr. Jolly gave Turpin's blood pressure reading on various dates—132/92 on 9/11/83, 170/100 on 11/7/83, and 146/80 on 6/18/84—and stated that he had prescribed Enduronyl (for hypertension) to be taken on a daily basis. Dr. Jolly stated that Turpin has been treated with Motrin since June 1979 for his arthritis, "with moderate relief." He also stated that another doctor put Turpin on Theodur for his chest beginning in July 1984, and that Turpin "has done fair under treatment." In response to the estimated degree of functional restoration expected and time required, Dr. Jolly stated that he believed Turpin "is about as good as he will ever be."

The Secretary referred Turpin to Don R. Whitener, M.D., a pulmonary disease specialist, for a consultative examination which took place on October 3, 1984. Dr. Whitener reported that he found "no specific reason to feel that [Turpin] is significantly impaired because of medical reasons." He reported that Turpin's pulmonary functions were normal, and that his chest x-ray was also interpreted as being normal. The origin of Turpin's chest tightness was unknown, but was "probably not related to angina pectoris." Dr. Whitener also reported that Turpin had leg cramps, etiology unknown, and that he had "probable mild osteo-arthritis in his cervical spine." Turpin's blood pressure was 160/90. Dr. Whitener also noted that Tur-

---

2. The record contains reports, dated September 20 and 21, 1984, which indicated that Turpin had been treated by Dr. Mechlin in 1980 for inflammation of the mucous membranes, and by Dr. Thomas in 1982 for "burning tongue syndrome." Neither doctor saw Turpin after these visits.

3. Seven pages of x-rays and/or Dr. Jolly's notes appeared in the record. These pages were totally unreadable, despite each page having been labelled "best copy obtainable."

pin smoked one to three packs of cigarettes per day until he quit in July 1984.

On December 4, 1984, Turpin began a series of visits for reflux (backward or return flow) symptoms. David L. Gifford, M.D., was the attending physician for these visits, having been referred by Dr. Jolly. On December 5, Dr. Gifford performed an endoscopy on Turpin, which revealed no significant abnormalities. To alleviate Turpin's symptoms, Dr. Gifford recommended discontinuing coffee intake and losing weight, and also recommended that Turpin continue to take Tagamet. Turpin saw Dr. Gifford again on December 31, after which Dr. Gifford reported he was "doing much better," but prescribed Reglan for his recurring symptoms.[4] On March 13, 1985, Dr. Gifford reported seeing Turpin, and that he was having more problems with reflux symptoms, apparently due partially to gaining back lost weight.

In addition to the foregoing medical reports, the record contains a letter dated April 9, 1985, from Turpin's former employer, to which was attached a copy of Dr. Jolly's statement submitted to the company for Turpin's disability pension. Dr. Jolly's letter, dated October 23, 1984, states: "Mr. Charles E. Turpin has been treated for hypertension, obstructive lung disease and arthritis. In my opinion Mr. Turpin will never be able to return to work at a brick plant."

The record also contains a psychological evaluation, dated June 5, 1985, which was done by the Columbia Resource Center, Inc., upon request of Turpin's counsel. A diagnostic interview and the Minnesota Multiphasic Personality Inventory (MMPI) revealed that Turpin had no notable psychological problems, but the MMPI scale configurations revealed three significantly elevated levels. According to the report, these elevations suggest a typical medical profile of a person with "long-standing physical disorders" who "experience[s] considerable physical discomfort as a result of these disorders." The tests also showed

"no evidence of conversion disorder, malingering, or lack of motivation for gainful employment."

In denying benefits, the ALJ found that Turpin had no impairment or combination of impairments which significantly limited his ability to perform basic work activities, *see* 20 C.F.R. § 404.1521, and that under the second step in the evaluation process, Turpin therefore had no severe impairment and was not disabled. *See* 20 C.F.R. § 404.1520(c). The ALJ thus did not continue evaluating Turpin's claim under the disability sequential analysis, *see* 20 C.F.R. § 404.1520, but he did find that Turpin retained "the capacity to return to the full range of work activity, including his past work as a pipe fitter."

## II. DISCUSSION.

Turpin claims that the district court erred in affirming the ALJ's decision because there was not substantial evidence to support the ALJ's findings that he did not have a severe impairment and could return to his previous work. We must affirm the ALJ's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Brand v. Secretary of the Department of Health, Education and Welfare*, 623 F.2d 523, 527 (8th Cir.1980). Substantial evidence is more than a "'mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); *accord Taylor v. Bowen*, 805 F.2d 329, 331 (8th Cir.1986).

■ In determining whether there is substantial evidence to support the ALJ's decision, this court is required to review the administrative record as a whole, taking into account evidence which fairly detracts from the ALJ's findings. See *Taylor*, 805 F.2d at 331 (citing *Brand*, 623 F.2d at 527). Thus, as another circuit has ac-

---

**4.** During his visit on December 31, 1984, Turpin told Dr. Gifford he was having trouble with his disability benefits. In his notes, Dr. Gifford stated that "[f]rom looking at what they have said, I don't think he is going to be able to get it again."

knowledged, the focus "is not so much on the district court's ruling as it is on the administrative ruling." *Havas v. Bowen,* 804 F.2d 783, 785 (2d Cir.1986) (quoting *Valente v. Secretary of Health and Human Services,* 733 F.2d 1037, 1047 (2d Cir. 1984)).

■ To meet the burden of proof regarding disability, a claimant must show that he or she has a medically determinable impairment or impairments which precludes performance of previous work. *See, e.g., McMillian v. Schweiker,* 697 F.2d 215, 220 (8th Cir.1983). Thus, not only must Turpin have shown a disabling impairment, but also that it was of a sufficient severity to prohibit him from returning to work as a pipe fitter. Turpin claims that he met this burden, and that in finding otherwise, the ALJ erred in numerous respects: giving undue weight to the report of Dr. Whitener, a consultative physician, and correspondingly failing to give adequate weight to the findings of Dr. Jolly, Turpin's treating physician; failing to accord adequate weight to the testimony of Turpin and Miss Case; failing to give any weight to Turpin's retirement from his previous employment on a disability pension; and, failing to adequately consider the combination of Turpin's impairments. After carefully examining the entire record, we agree that the ALJ's findings are not supported by substantial evidence.

First, we question the ALJ's findings that Turpin had no severe impairment, *i.e.,* an impairment or combination of impairments that "significantly limit[s the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). As defined in the regulations, basic work activities include "[p]hysical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling[.]" *Id.* § 404.1521(b)(1).

The medical reports show that Turpin complained of chest pain, neck and back problems, arthritis, and passing out as early as 1983 and continuing through the period of alleged disability. During this period, Dr. Jolly, Turpin's treating physician, diagnosed Turpin as suffering from a "con-siderable" amount of cervical spondylosis, syncope, arthritis, obstructive lung disease, and high blood pressure, in addition to treating him for a number of other ailments. A referral physician, Dr. Gifford, treated Turpin for continual reflux problems in late 1984 and early 1985, although he apparently felt that these problems could be somewhat alleviated by weight loss and coffee reduction. Finally, Dr. Whitener, a consultative physician who examined Turpin only once, reported that Turpin's pulmonary functions and chest x-rays were normal, that his leg cramps and chest tightness were of undeterminable origin, that he had mild osteo-arthritis of the cervical spine, that he had normal movement of the neck, and that his blood pressure was 160/90 (despite anti-hypertension medication). The evidence also shows that Turpin had a number of medications prescribed to ·alleviate many of the above ailments.

■ Despite this evidence, the ALJ found that Turpin had no severe impairments and only one general type of impairment: "early degenerative changes of the cervical spine." To so conclude, the ALJ would necessarily have had to discount the medical evidence from Dr. Jolly's numerous evaluations of Turpin in favor of Dr. Whitener's one-day evaluation. However, this court has repeatedly emphasized, "the report of a consulting physician who examined that claimant once does not constitute 'substantial evidence' upon the record as a whole, especially when contradicted by the evaluation of the claimant's treating physician." *Lanning v. Heckler,* 777 F.2d 1316, 1318 (8th Cir.1985) (citing *Hancock v. Secretary of Department of Health, Education and Welfare,* 603 F.2d 739, 740 (8th Cir.1979)); *see Ward v. Heckler,* 786 F.2d 844, 846 (8th Cir.1986) (per curiam); *Anderson v. Heckler,* 738 F.2d 959, 960 (8th Cir.1984); *McGhee v. Harris,* 683 F.2d 256, 259 (8th Cir.1982). Relatedly, this circuit also requires the ALJ to give substantial weight to the treating physician's opinion in the evaluation process, *see, e.g., Ward,* 786 F.2d at 846; *Lanning,* 777 F.2d at 1318; *Hancock,* 603 F.2d at 740, al-

though this opinion may be discounted if it is unsupported by the evidence, *Janka v. Secretary of Health, Education and Welfare*, 589 F.2d 365, 369 (8th Cir.1978), or is merely conclusory. *Ward*, 786 F.2d at 846 (citing *Brand*, 623 F.2d at 527–28). We believe that the ALJ did not heed these standards in the instant case.

First, Dr. Jolly's findings could not be discounted as conclusory; his opinions were based on numerous examinations and hospital visits, as evidenced by the reports of record. *Contra Ward*, 786 F.2d at 846–47 (treating physician's opinions discredited as conclusory because based on incomplete and brief reports of record). Moreover, in concluding that Dr. Jolly's opinion that Turpin was disabled was "not supported by the medical findings," the ALJ erroneously put a large amount of emphasis on Dr. Whitener's findings—that Turpin's pulmonary functions and chest x-rays were normal, and that Turpin had full range of motion in his neck—and also on his opinion that Turpin was "not significantly impaired by any medical reasons." Although admittedly Dr. Whitener's report partially contradicted Dr. Jolly's findings,[5] the ALJ did not pay heed to the fact that Dr. Whitener was a consultative physician who examined Turpin only *once*, nor to our admonition that such an evaluation does not constitute substantial evidence on the record as a whole, especially in light of Dr. Jolly's contradictory evaluation. In fact, Dr. Whitener was the only physician examining Turpin who found that Turpin would not be entitled to disability benefits based on his findings.[6] No doctor disagreed with Dr. Jolly's findings that Turpin had arthritis, syncope, stomach problems, hypertension and spine degeneration, although there admittedly may have been some disagreement as to the severity of these ailments. Nor did any doctor question the medication prescribed to alleviate the symptoms accompanying these impairments.

In summary, we conclude that the ALJ erred in placing an undue amount of weight on Dr. Whitener's evaluation, and correspondingly failed to accord adequate weight to Dr. Jolly's findings. This court believes that Dr. Jolly's findings detracted from the ALJ's finding that Turpin did not suffer from a severe impairment. Although a close question, we hold that substantial evidence does not support this part of the ALJ's determination.

■ Even if, however, we had determined that the evidence did support such a finding, we would still be required to remand this case. Without explication, the ALJ concluded that Turpin had the capacity to return to "the *full range* of work relat-

---

**5.** Although at first glance, Dr. Whitener's findings appear to support the ALJ's determination that Turpin had no severe impairment, we note that his findings regarding normal pulmonary activity did not necessarily contradict Dr. Jolly's non-pulmonary findings. Moreover, although Turpin's chest x-rays were normal when examined by Dr. Whitener, that, in and of itself, does not take away from the fact that Dr. Jolly treated Turpin for obstructive lung disease earlier that year. It appears that the medical evidence relating to Dr. Jolly's treatment of this disease may have substantiated Turpin's complaints of chest pain, which could have been brought on by the dust and dirt at his former employer's plant. However, the x-rays and notes submitted by Dr. Jolly regarding this condition were totally unreadable; thus, at the least, the ALJ was obliged to develop the record in this respect. *See Brissette v. Heckler*, 730 F.2d 548, 550 (8th Cir.1984) (remand warranted partially by illegible copies of relevant hospital reports). Further, although Dr. Whitener indicated that Turpin had normal neck movement, this did not necessarily conflict with Dr. Jolly's findings of

cervical impairment. Finally, we also note that Dr. Whitener indicated that Turpin had arthritis, leg cramps and chest tightness of indeterminate origin, and high blood pressure.

We further note that Dr. Gifford's treatment of Turpin was only for stomach and reflux problems, and that none of his medical findings contradicted Dr. Jolly's findings relating to Turpin's other impairments.

**6.** Dr. Gifford also indicated that Turpin would probably not receive benefits. His belief, however, was based *not* on his treatment of Turpin for reflux and stomach problems, but, according to the record, solely on outside information of indeterminate origin. *Cf. Davis v. Schweiker*, 671 F.2d 1187, 1189 (8th Cir.1982) (opinions of non-examining physicians deserve little weight in the overall evaluation of disability). Moreover, Dr. Gifford treated Turpin *only* for stomach-related problems which, in and of itself, does not detract from the evidence that Turpin had disabilities related to other bodily functions.

ed activities, including his past work as a pipe fitter." (Emphasis added.) Turpin's past work required lifting of 50–100 pound loads, constant bending, considerable walking and standing, and other strenuous work. The record contains no medical evidence to show that Turpin could do any of these activities on a day-in and day-out basis.[7] In fact, all of the evidence of record points in the opposite direction.

▮▮▮ First, Dr. Jolly was the only physician who gave any indication of Turpin's ability to perform his previous work. He expressly opined that Turpin would "never be able to return to work at a brick plant," in light of his arthritis, hypertension, and lung problems. Although Drs. Whitener and Gifford made statements relating to disability benefits, neither doctor gave any indication of how Turpin's ailments would affect his work capabilities. Second, the ALJ gave no consideration to the fact that Turpin retired from his previous employment on a disability pension, although he did make a conclusory statement that the standards for this determination were dif-

ferent from those under the Social Security Act. Admittedly, the employer's determination was not binding on the ALJ, but we believe that this finding is entitled to some weight and deserves, at the least, further investigation into how different the standards actually are. *Cf. Havas v. Bowen,* 804 F.2d 783, 786 n. 1 (2d Cir.1986) (governmental awards of disability are entitled to some weight in the evaluation process and should be considered). Third, Turpin's subjective complaints of pain, although discounted by the ALJ for a variety of questionable reasons,[8] were corroborated by two sources: Miss Case's objective observations; and the results of the psychological evaluation, which indicated that Turpin had the profile of a person with "long-standing physical disorders" who "experience[s] considerable physical discomfort as a result of these disorders," and that there was no evidence of "malingering, or lack of motivation for gainful employment." The ALJ failed, however, to consider either of these sources.

---

**7.** We do not intend to imply that our holding in *Brown v. Heckler,* 786 F.2d 870 (8th Cir.1986) is determinative of the outcome of this case. In *Brown,* we held that step 2 of the disability evaluation process, 20 C.F.R. § 404.1520(c), was invalid because it required a determination of disability without consideration of a claimant's age, work experience, or educational background. *Brown,* 786 F.2d at 871–73. Rehearing of that case has been granted and has been stayed pending the Supreme Court's decision in *Yuckert v. Heckler,* 774 F.2d 1365 (9th Cir.1985), *cert. granted,* — U.S. —, 106 S.Ct. 1967, 90 L.Ed.2d 652 (1986).

Although *Brown* would require a remand in this case, in light of the ALJ's failure to consider the above factors in making his determinations, we base our decision on other grounds. Specifically, we note that there was no medical evidence supporting the ALJ's finding that Turpin had the ability to return to the *full range* of work activity, much less even sedentary activity, and further, there was no evidence that Turpin's impairments did not limit his physical ability to work, stand, sit, lift, push, pull, reach, carry or handle, as required by 20 C.F.R. § 404.1521(b).

**8.** The ALJ found that Turpin's complaints of pain so severe as to prevent his ability to work were not credible because they were inconsistent with: 1) the medical findings; 2) Dr. Gifford's statement regarding disability benefits; 3) his driving; 4) his need for treatment and hospi-

talization; and 5) his appearance and demeanor at the hearing.

Subjective complaints of pain may not be discredited solely because the objective medical evidence does not support them, *e.g., Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir.1984), or solely because of the claimant's appearance at the hearing. *Nunn v. Heckler,* 732 F.2d 645, 646, 648 (8th Cir.1984). To be sure, the ALJ did not discredit Turpin's testimony *solely* on either basis, but on closer examination, the ALJ's reasons appear questionable. First, as discussed in our opinion, by placing undue weight on Dr. Whitener's findings, the ALJ virtually ignored Dr. Jolly's findings that support Turpin's claims of pain. Second, Dr. Gifford's statement regarding disability benefits was not made on his personal observations or treatment of Turpin, but on unknown, outside information. Third, the ALJ implied that the physicians would have restricted Turpin's driving if he had problems of passing out. Although daily activities of the claimant are proper sources for consideration in determining credibility, *see Polaski,* 739 F.2d at 1322, the ALJ failed to acknowledge Turpin's testimony regarding the *amount* of driving he did, and also failed to discuss his testimony regarding limited social activity and household chores. Finally, we also note that benefits may not be denied on the basis that Turpin has not been hospitalized since the alleged onset of disability. *See Basinger v. Heckler,* 725 F.2d 1166, 1170 (8th Cir.1984).

In summary, there is no evidence supporting the ALJ's conclusory finding that Turpin can return to his previous work. Unquestionably, this area will have to be developed on remand.

## III. CONCLUSION.

We conclude that the ALJ's decision was not supported by substantial evidence on the record as a whole. Accordingly, we reverse the district court's order and remand Turpin's claim to the ALJ for further consideration of Turpin's claim under the sequential disability evaluation process.