**James THOMAS, Appellant,**

**v.**

**Louis W. SULLIVAN, M.D.,
Secretary of Health and
Human Services, Appellee.**

**No. 90–1936EM.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 8, 1991.

Decided March 12, 1991.

George Luberda, St. Louis, Mo., for appellant.

Wesley Wedemeyer, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before ARNOLD, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

James Thomas appeals the district court's [1] order affirming the denial of his application for disability insurance benefits. He also appeals the district court's refusal to remand the case to the Secretary for the introduction and consideration of additional evidence. Lastly, Thomas appeals the district court's refusal to permit him to conduct discovery in order that he might determine whether his due process rights have been violated. We affirm the district court in all respects.

## I. BACKGROUND

Thomas was born in April 1946 and completed ten years of education. His most recent work involved transporting patients to and from hospitals and other facilities; he performed this work from October 1971 until March 1985. During the course of this employment, Thomas was involved in at least two work-related automobile accidents. These accidents, combined with the constant lifting of patients, contributed to a severe back pain that ultimately · caused Thomas to quit his job.

On May 6, 1986, Thomas filed for disability and supplemental security income benefits. After an administrative denial, Thomas obtained a hearing before an ALJ. In addition to listening to Thomas' testimony, the ALJ reviewed reports submitted by Doctors Herman Russell, Ronald Hoffmann and Edward Eyerman and a vocational counselor, Walter Schmiedeskamp. These reports indicated, and the ALJ found, that Thomas suffered from sclerosis of his L3 vertebrae, hypertension, and obesity. R. at 18. Doctors Hoffmann and Eyerman disagreed whether the sclerotic body was cancerous. It was generally agreed that Thomas' maladies restricted his ability to lift objects, and the ALJ found that Thomas could not lift more than twenty pounds. *Id.*

The ALJ determined that Thomas' afflictions did not equal a listed impairment or combination of impairments. He further found that, even though Thomas was unable to return to his prior job, he still possessed the skills and residual functional capacity to perform "semi-skilled work activities of light work." *Id.*

The Appeals Council denied Thomas' request for review of the ALJ's decision on June 18, 1987. R. at 8. Prior to being notified of this denial, Thomas sent a letter to the Appeals Council, complaining about Dr. Eyerman's report. Attached to this letter was a report from Dr. William Juergens in which Dr. Juergens confirmed the existence of the sclerotic body and indicated that Thomas' refusal to undergo a biopsy was "unfortunate" because, if the growth were cancerous, "treatment would be effective in relieving [Thomas'] pain and perhaps significantly improve his lifestyle and longevity." R. at 6.[2] Dr. Juergens went on to opine that Thomas was "totally disabled" by the back pain. *Id.* The Appeals Council reaffirmed its decision to deny benefits, R. at 3, and Thomas filed suit in federal court. The district court

---

1. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

2. Thomas did enter a hospital in order to have a biopsy performed, but he "transferred" without having the operation. R. at 174; *see also* R. at 35.

adopted the magistrate's recommendation that the case be remanded to the Secretary for further findings. *Thomas v. Bowen*, No. 87-1561C(3) (E.D.Mo. July 14, 1988).

A new ALJ was appointed; in addition to the reports admitted at the first hearing, this ALJ reviewed reports from Doctors Dean Hageman and Mary Joseph. Doctor Hageman's report discussed the results of a Magnetic Resonance Imaging ("MRI") he performed on Thomas' spine, which indicated that the sclerotic body was most likely a "benign process" and not cancerous. R. at 324. Doctor Joseph's report consisted of a two-page form provided by an insurance company. On this form, Dr. Joseph indicated that Thomas' cardiac condition imposed only a slight limitation on his activities and his diabetes was not severe, but that his activities were severely limited due to his back injury. R. at 322. She described Thomas as unable to perform either his regular or any other occupation, yet indicated that rehabilitation, vocational counseling and/or retraining would be recommended. R. at 323.

Thomas testified that he suffered from pain in his joints, high blood pressure, an ulcer and diabetes, and that he was taking medication for the first three of these conditions. He further testified that the pain medication, Tylenol III, was ineffective. R. at 271. Walking or standing for more than fifteen minutes would cause pain in his back, feet, and knees, R. at 274-75, and sitting for extended periods caused pain in these same areas. R. at 277-78. The most comfortable position for Thomas was lying down. R. at 280. Finally, Thomas testified that Dr. Joseph was treating him for his arthritis, high blood pressure and diabetes, and that he went elsewhere for treatment on his back. R. at 264. However, Dr. Hageman's report was not given to the doctors treating Thomas' spine; instead, it was given to Dr. Joseph. R. at 269.

Doctor Ricky George, a vocational expert, also testified. In response to a hypothetical supposing a man with Thomas' work experience, unable to lift more than ten pounds, and having to shift from sitting to standing position every thirty to sixty minutes, Dr. George testified that there were jobs in the national economy that such a person could perform. R. at 293-96. When asked whether any employment existed for an individual who, due to pain, had to spend most of the day lying down, Dr. George testified that no such jobs existed. R. at 297.

The ALJ determined that Thomas had not engaged in substantial gainful activity since March 1985, but that his afflictions, singly and collectively, failed to equal a listed impairment. R. at 245. The ALJ discounted Dr. Joseph's statement that Thomas could not perform even sedentary work by noting that, though she relied on the MRI, Dr. Hageman, who performed the MRI, did not reach the same conclusion. R. at 245. The ALJ also discounted Thomas' assertions of pain, citing Thomas' failure to undergo a biopsy as recommended as well as his failure to obtain or be prescribed a stronger painkiller. R. at 245. Ultimately, the ALJ found that Thomas had the ability to stand for at least fifteen minutes at a time, sit for at least one hour at a time, and lift no more than ten pounds. R. at 246, 247. Based on the testimony of Dr. George, the ALJ denied benefits because there were "a significant number of jobs in the national economy [Thomas] could perform." R. at 247. The ALJ's judgment was accepted by the Appeals Council, R. at 217, and thus became the final decision of the Secretary.

In June 1989, Thomas reopened his federal court case, alleging the ALJ's decision was not supported by the evidence and seeking discovery relating to Dr. George's alleged bias. On December 30, the magistrate recommended that Thomas' motion for summary judgment and his request for discovery be denied. In March 1990, Thomas also sought permission to introduce new evidence into the proceedings. On March 21, 1990, the district court denied this latter motion, and two days later the court accepted the Magistrate's recommendations. Thomas appeals these decisions.

## II. DISCUSSION

### A. The Propriety of the ALJ's Decision

Thomas contends that the ALJ's decision on disability was not supported by

substantial evidence contained in the record as a whole. Crucial to Thomas' argument is the ALJ's failure to accord deference to Dr. Joseph's report finding Thomas to be "totally disabled." Thomas correctly points out that a treating physician's opinion is normally accorded a higher degree of deference than that of a consulting physician, *see, e.g., Thompson v. Bowen,* 850 F.2d 346, 349 (8th Cir.1988), but such deference is not always justified. When the treating physician's opinion consists of nothing more than conclusory statements, the opinion is not entitled to greater weight than any other physician's opinion. *Ward v. Heckler,* 786 F.2d 844, 846 (8th Cir.1986) (per curiam). Doctor Joseph's report is not a "comprehensive study" as alleged by Thomas, Appellant's Brief at 6, but rather consists of a two page form provided by an insurance company. R. at 322–23. It contains few explanations and is composed almost entirely of conclusions. Under these circumstances, the ALJ was not obliged to accord Dr. Joseph's opinion greater weight than the opinions of the other doctors in this case.[3]

■ Thomas also alleges error in the ALJ's refusal to award benefits because of Thomas' complaints of pain. We review this determination by "review[ing] the administrative record as a whole, taking into account evidence which fairly detracts from the ALJ's findings," *Turpin v. Bowen,* 813 F.2d 165, 169 (8th Cir.1987), all the while recognizing that the Secretary's decision is not to be reversed merely because this panel might have been inclined to grant benefits. *Bland v. Bowen,* 861 F.2d 533, 535 (8th Cir.1988) (per curiam).

■ As is true in many disability cases, there is no doubt that the claimant is experiencing pain; the real issue is how severe that pain is. *Cf. Benskin v. Bowen,* 830 F.2d 878, 883 (8th Cir.1987). In that regard, the ALJ recognized the need to rely on the factors announced in *Polaski v. Heckler,* 751 F.2d 943 (8th Cir.1984) (subsequent history omitted) and, after doing so, determined that Thomas' testimony about the crippling effects of his pain were not entirely credible. The ALJ's findings reflect that he was persuaded that Thomas' pain prevented him from "standing and walking for more than 15 minutes at a time, lifting more than ten pounds, and sitting for more than one hour at a time." R. at 247. These findings were totally consistent with Thomas' own testimony. R. at 275, 278. However, the ALJ did not believe Thomas insofar as he testified that the pain rendered him bedridden. Specifically, the ALJ noted that Thomas had failed to undergo a biopsy, even though this procedure represented an opportunity to properly diagnose and treat his condition,[4] and that Thomas had not received a stronger painkiller than Tylenol III. The ALJ may properly consider both the claimant's willingness to submit to treatment, *Benskin,* 830 F.2d at 884, and the type of medication prescribed, *Nunn v. Heckler,* 732 F.2d 645, 648 (8th Cir.1984), in order to determine the sincerity of the claimant's allegations of pain. The ALJ also noted that there was no medical evidence, apart from Dr. Joseph's conclusory report, indicating that his condition was capable of causing the degree of pain he alleged. R. at 246. While this absence cannot be the sole determinant of a claimant's believability, it is a factor that may be considered. *Burns v. Sullivan,* 888 F.2d 1218, 1219 (8th Cir.1989) (per curiam). Finally, the ALJ considered the fact that Thomas was able to engage in "general social activities." R. at 246. These record inconsisten-

---

**3.** We also express doubts that Dr. Joseph could be considered Thomas' treating physician because, according to Thomas' own testimony, she was not treating him for his back. The treating physician rule is premised, at least in part, on the notion that "the treating physician is usually more familiar with a claimant's medical condition than are other physicians...." *Schisler v. Heckler,* 787 F.2d 76, 81 (2d Cir.1986). Thus, for purposes of Thomas' back, the treating physician was not Dr. Joseph but rather the doc-

tor(s) who actually treated him for his back and associated pain.

**4.** Though Thomas did eventually undergo an MRI, which may or may not produce the same results as a biopsy, the fact remains that he did not submit to this procedure until almost three years after he was to undergo the biopsy that he cancelled.

cies amply support the ALJ's decision to discount Thomas' claim that he was bedridden with pain and unable to work.[5] Substantial evidence in the record as a whole supports the findings of the ALJ.

### B. Request for Remand

■■■ Thomas next contends that the district court erred in refusing to remand the case to the ALJ in order that additional evidence might be submitted for consideration. A case can be remanded only upon a showing that there is new material evidence and that there was good cause for the claimant's failure to include the evidence in the original administrative proceedings. 42 U.S.C. § 405(g). The evidence Thomas seeks to incorporate falls into two main categories: evidence that existed prior to the administrative hearing and evidence that did not exist until after the administrative hearing was concluded. We address these two categories separately and rule that the district court did not abuse its discretion in refusing to remand.[6]

### 1. Evidence Existing Prior to Hearing

■■■ The belated evidence that Thomas seeks to introduce and that existed prior to the ALJ's decision consists of hospital and doctor records relating to Thomas' ailments. He contends that his failure to introduce these records in the administrative proceedings is excused because he was entitled to expect Dr. Joseph's testimony to be accorded substantial weight in support of his position. Thus, the hospital records would have been unnecessary and there was no reason to incur the expense associated with their production. Appellant's Brief at 18.

Thomas' position is unfounded. As the claimant, Thomas bore the burden of proving his disabilities, 20 C.F.R. §§ 404.-1512(a), 416.912(a), and he thus had the responsibility for presenting the strongest case possible. For whatever reason, Thomas felt these additional records were unnecessary to prove his point; his miscalculation in this regard does not supply good cause for failing to introduce these records in the first instance.

### 2. Evidence Created After the Hearing

■■■ The evidence that did not exist until the conclusion of the administrative proceedings consists primarily of records relating to Thomas' heart attack, which occurred approximately fourteen months after the ALJ made his decision, and records relating to Thomas' need for a kneecap replacement. The fact that these conditions and associated records did not exist at the time of the hearing serves as cause sufficient to excuse Thomas' failure to include them in the administrative proceedings. *See Cherry v. Heckler,* 760 F.2d 1186, 1192 (11th Cir.1985); *Burton v. Heckler,* 724 F.2d 1415, 1418 (9th Cir.1984).

■■■ The issue of relevancy, however, is more problematic. "Medical evidence obtained after an ALJ decision is material if it relates to the claimant's condition on or before the date of the ALJ's decision." *Williams v. Sullivan,* 905 F.2d 214, 216 (8th Cir.1990). The evidence at issue does not relate to Thomas' condition as it existed within this time frame, but rather to a time frame significantly after the administrative

---

5. Thomas also complains that the hypotheticals posed to the vocational expert were improper for failing to include all of his claims. This argument is unavailing because the hypothetical question at issue contained all of the ailments and restrictions found to exist by the ALJ. *Roberts v. Heckler,* 783 F.2d 110, 112 (8th Cir.1985).

6. The standard of review seems to differ from circuit to circuit. At least two circuits apparently conduct a de novo review of decisions involving a request to remand for new evidence. *See Nelson v. Bowen,* 855 F.2d 503, 506 (7th Cir. 1988); *Caulder v. Bowen,* 791 F.2d 872, 875

(11th Cir.1986). The Ninth Circuit has indicated that the decision to remand is reviewed for an abuse of discretion, *see Clem v. Sullivan,* 894 F.2d 328, 332 (9th Cir.1990), yet the predicate issue of materiality of the new evidence is reviewed de novo, *see Booz v. Secretary of Health and Human Servs.,* 734 F.2d 1378, 1380 (9th Cir.1984). We have indicated that a district court's decision *not to remand to the ALJ is* reviewed for an abuse of discretion, *see Chandler v. Secretary of Health and Human Servs.,* 722 F.2d 369, 371 (8th Cir.1983) (per curiam), and are constrained to follow our prior case.

proceedings took place.[7] The evidence relating to the heart attack and kneecap replacement may demonstrate a deterioration of Thomas' condition, and may even render him eligible for benefits at this time. However, these conditions and records do not alter Thomas' condition as it existed at the time the ALJ made his decision and thus are not material to Thomas' instant application. *Cf. Godsey v. Bowen*, 832 F.2d 443, 445 (7th Cir.1987); *Sanchez v. Secretary of Health & Human Servs.*, 812 F.2d 509, 511–12 (9th Cir.1987); *Oliver v. Secretary of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir.1986).[8]

### C. Due Process

■■■■ Thomas contends that his right to due process was violated because "Dr. George was a biased witness who was prepared to find Mr. Thomas employable regardless of the hypothetical questions posed to him." Appellant's Brief at 21. However, a close scrutiny of Thomas' position reveals that his argument constitutes nothing more than a disagreement with both the ALJ's findings and Dr. George's testimony, neither of which amounts to a constitutional violation.

To demonstrate Dr. George's bias, Thomas first relies on affidavits submitted to the district court. The first affidavit is from Dr. Gladys Gruenberg, a Professor of Economics and Industrial Relations at St. Louis University, who contends that Dr. George failed to consider that employers would be unwilling to hire Thomas. Plaintiff's Appendix at 78. The issue of hireability is not to be considered in disability hearings, *see* 42 U.S.C. § 423(d)(2)(A); consequently, Dr. George's failure to discuss Thomas' hireability does not demonstrate bias on his part.

The second affidavit was submitted by James England, a rehabilitation counselor. England's affidavit indicates that the ALJ's hypotheticals failed to fully credit Thomas' pain and that none of the jobs identified by Dr. George would allow Thomas an opportunity to lie down whenever he experienced pain. Plaintiff's Appendix at 81, 83. Doctor George was required to answer the hypotheticals asked of him; he was not supposed to conduct an independent determination of Thomas' ailments. England's dispute is not with Dr. George, but rather with the ALJ's findings. Thomas' ability to find someone who disagrees with the ALJ's factual findings does not demonstrate a denial of due process.[9]

Finally, Thomas contends that after the hearing he overheard Dr. George say that he had "just won another one for the government." Appellant's Brief at 22. This statement does not demonstrate that Dr. George was predisposed against Thomas. Indeed, in response to one of the hypotheticals, Dr. George indicated that Thomas was unable work. R. at 297. Doctor George had no influence on what the ALJ's factual findings would be, and thus had no way to influence which of the hypotheticals would be the foundation for the ALJ's opinion. We do not believe that this statement, taken alone and out of context, represents a potential due process violation, nor does it justify the far-reaching discovery sought by Thomas.[10]

### III. CONCLUSION

The ALJ's disability decision must be upheld because it was supported by substantial evidence in the record as a whole.

---

7. Thomas' hypertension could not render him disabled until he suffered "severe damage to one or more of four end organs; heart, brain, kidneys, or eyes. (retinae)." 20 C.F.R. Part 404, subpart P, App. 1, § 4.00 C. The new evidence at issue does not demonstrate that such damage existed at the time of the ALJ's decision.

8. Of course, Thomas is free to refile for benefits based on his current condition if he still meets the eligibility requirements.

9. England also disputes Dr. George's testimony regarding the numbers of jobs available. Appellant's Appendix at 81–82. This dispute represents a difference of opinion held by two different experts and does not implicate constitutional concerns.

10. Thomas has requested that the Secretary produce documents relating to every proceeding in which Dr. George has testified, as well as all documents, files, and communications in the Secretary's possession that refer or relate to Dr. George. Appellant's Appendix at 61–62.

The district court's refusal to remand the case to the Secretary for consideration of additional evidence is upheld because the statutory preconditions for such a remand have not been met. Finally, the district court properly determined that Thomas' due process rights were not denied. For these reasons, the decision of the district court is affirmed.

ARNOLD, Circuit Judge, concurring in part and dissenting in part.

I agree with the Court that the present record contains sufficient evidence to justify the ALJ's finding of no disability. I also agree that the motion to remand was properly denied, insofar as it rested on evidence that existed before the hearing. Finally, I fully concur in that portion of the Court's opinion which rejects the claimant's due-process argument. Thus, I join parts IIA, IIB(1), and IIC of the Court's opinion.

With respect to part IIB(2), however, I respectfully dissent. In my view, it was an abuse of discretion not to remand the case for further consideration at the administrative level of the claimant's heart attack and evidence relating to it. I cannot agree with the Court's position, *ante,* at 260, that this evidence was irrelevant. In the first place, the human body is a unified whole, and any event as serious as a heart attack will often be connected, in some way or other, to other serious impairments from which the patient was already suffering. Second, and more specifically, one of the impairments that Thomas claimed at the time of his hearing before the ALJ was hypertension. He also testified that he was suffering from diabetes. His subsequent heart attack could well be persuasive evidence of the severity of these conditions. It is perfectly true that the ultimate question is whether Thomas was disabled at the earlier time asserted in his request for disability benefits. Subsequent events, however, often throw light on the significance of present or past conditions. It is likely that this is the case here, and I therefore respectfully disagree with the conclusion that the new evidence, the occurrence of a heart attack, did not relate to the impairments earlier claimed.

The Court says that Thomas can now commence a new disability proceeding, at which all of the evidence, including the occurrence of the heart attack, can be considered. It seems very likely that he is now disabled, and the only issue in this new proceeding would, probably, be the fixing of the proper onset date. In my view, a remand for consideration in the context of a record already made is much preferable to requiring that an entirely new administrative proceeding be commenced. Such proceedings in the Department of Health and Human Services have been known to drag on for years, and it is in everyone's interest that a prompt decision one way or the other be reached in this case.

To the extent that this Court approves the District Court's complete denial of the motion to remand, I respectfully dissent.