**Noah C. BELL, Jr., Plaintiff-Appellant,**

**v.**

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant-Appellee.**

**No. 85–3543**
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

August 14, 1986.

William C. Davis, Jr., Jacksonville, Fla., for plaintiff-appellant.

Dorothea Beane, Asst. U.S. Atty., Jacksonville, Fla., for defendant-appellee.

Before FAY, JOHNSON and CLARK, Circuit Judges.

PER CURIAM:

In this Social Security disability case, we review the district court's conclusion that the administrative law judge and appeals counsel did not err in concluding that appellant is not disabled. This is a troubling case in which the claimant's treating physician concluded that the claimant is totally disabled because of massive heart enlargement while the ALJ relied upon a consulting physician's single examination and the report of the agency's medical consultant that the claimant retained the ability to perform a full range of sedentary activities.

Bell was born May 24, 1928, has a college degree, and had performed clerical functions essentially sedentary in nature until he stopped working April 16, 1982. It is undisputed that Bell has a severe cardiac problem, probably congenital having its origin in rheumatic fever and resulting in cardiac irregularities, fatigue, and shortness of breath. The claimant's physician who had treated him at least ten years concluded from various tests that Bell had a gross enlargement of the right atrium and right ventricle, as well as apparent mitral and tricuspid prolapse.

There is no dispute that Bell's condition constitutes a severe impairment. The inquiry is whether Bell's impairment meets or equals a listed impairment which would qualify him for a disability rating. *See* 20 C.F.R. § 404.1520(d) and app. 1 to pt. 404 (list of various impairments based on certain objective symptomatology). Bell's impairment relates to category 4.01, Cardiovascular System. If Bell's impairment does not qualify him for a disability rating, he could still qualify for such a rating if he could prove that his illness prevents him from performing his past work or any other work. Bell failed to establish disability under any of these methods of qualifying.

Three doctors presented evidence for consideration by the ALJ, all in memorandum or letter form. Dr. John J. Rahaim is Bell's regular physician and has treated Bell since 1971. Dr. Rahaim's letter (Record at 99) describes Bell's history, medications, and the results of an echocardiogram. After describing the damage to Bell's heart, Dr. Rahaim concludes: "His condition will not improve and he will continue to suffer from severe disability."

Dr. A.E. Anderson examined Bell at the request of the agency and gave the following diagnosis and comment:

DIAGNOSIS: Probable rheumatic heart disease with severe cardiomegaly, probable mitral insufficiency, right bundle branch block, AV heart block, ST segment T-wave abnormalities and PAC's. Class II, C.

COMMENT: Although there was no evidence of congestive heart failure, this patient is felt to be restricted to a program of light physical activity by his cardiac difficulty.

Record at 87.

Dr. Sanford Cobb, a regular employee of the agency, reviewed Bell's file, including

the medical reports of Dr. Rahaim and Dr. Anderson. He concluded that Bell had a severe cardiac problem, probably congenital in origin and, while concluding that Bell had a severe impairment, he found him not to have congestive heart failure. *See* category 4.02, app. 1 to pt. 404 in 20 C.F.R. Dr. Cobb concluded that Bell could do sedentary work, but that he should not stand or walk as much as 6 hours a day.

In light of this medical evidence and Bell's education and work history, the ALJ found that Bell "has the residual functional capacity to perform essentially a full range of 'sedentary work' activities as defined by the applicable Social Security Regulations."

■ Appellant contends that this finding is not supported by substantial evidence since the ALJ did not give proper weight to the opinion of Bell's treating physician.[1] We have held that good cause must be shown if the opinion of the treating physician is discounted. We have further held that a non-examining physician's opinion is entitled to little weight if it is contrary to the opinion of the claimant's treating physician. See *Broughton v. Heckler*, 776 F.2d 960 (11th Cir.1985), for a discussion of these principles. In this case we do not find any particularized difference, let alone actual conflict, in the medical diagnoses of the three physicians. The variance among them is largely a matter of expression, as neither Dr. Rahaim nor Dr. Anderson described Bell's impairment in terms of the detailed objective symptoms of cardiovascular impairment set out in the Regulations. All three opinions reach about the same medical conclusion. They only diverge with respect to disability to work, but that divergence is not sufficiently articulated in Bell's behalf to warrant a reversal that Bell could not do a full range of sedentary work. Consequently, we con-

clude that the ALJ's finding that Bell is not unable to engage in substantial gainful activity is supported by substantial evidence. The treating physician's opinion on disability was properly discounted here.[2]

The decision of the district court is AFFIRMED.

## APPENDIX A

In an attempt to explain our consideration of Dr. Rahaim's diagnosis, we will elaborate on our opinion. All doctors who have examined Bell, the ALJ, and all judges who have reviewed the case conclude that Bell has a severe cardiac problem and impairment. However, the issue is whether Bell is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A).

Appellant argues (1) that claimant's severe impairment met or equalled the Secretary's listed impairments (2) that the evidence established claimant could not perform his past relevant work and (3) that the ALJ applied the incorrect legal standard in evaluating claimant's subjective complaints of disability. *See supra* note 3.

The appellant and the dissent miss the mark if they believe Dr. Rahaim's medical opinion and conclusions meet the requirements of § 404.1520(d) of the regulations which provides, "if you have an impairment which meets the duration requirement and is listed in Appendix 1, or we determine that the impairment is equal to one of the listed impairments, we will find you are disabled without considering your age, education, and work experience." We include in the Appendix B 20 C.F.R. § 401, pt. 404, subpt. P, app. 1 which describe the listed impairments that detail various types of cardiovascular diseases and the objective

---

1. The dissent suggests that we do not discuss "good cause" for discounting Dr. Rahaim's diagnosis. We discuss this in Appendix A to this opinion.

2. The ALJ was also correct in discounting appellant's subjective complaints of disability. The ALJ considered appellants claims of nausea, pal-

pitations and shortness of breath. He elicited testimony that some of appellant's symptoms had been diagnosed as the result of anxiety rather than organic infirmities. The ALJ then made a proper credibility determination that appellant's subjective complaints were caused in part by overreaction to his heart condition.

symptoms which must be found to support a finding of disability under regulation 404.1520(d) and subsection 4.02. The type of cardiac illness suffered by Bell comes within the purview of subsection 4.02, congestive heart failure. Dr. Cobb was of the opinion that his condition is cor pulmonale, listed under paragraph D.

At no point in his opinion, did Dr. Rahaim compare his objective findings with respect to Bell's illness with the listed objective findings under subsection 4.02 and conclude that Bell met the listed impairments. In fact Dr. Rahaim does not mention the regulations or the listed impairments. Nor does Dr. Rahaim state that Bell has an impairment that is equal to one of the listed impairments as required by the regulation. Nor does Dr. Rahaim state that Bell had several different impairments which in combination would prevent Bell from engaging in substantial gainful activity.

 We hold that when a claimant contends that he has an impairment meeting the listed impairments entitling him to an adjudication of disability under regulation 404.1520(d), he must present specific medical findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such an equivalency. *See* 20 C.F.R. §§ 404.1525 and 404.1526. Dr. Rahaim's conclusion that Bell is "totally disabled," and that "[h]is condition will not improve and he will continue to suffer from severe disability" is not sufficient. Bell has not met the burden of furnishing the medical findings which would permit a determination of disability under regulation 404.1520(d).

Appellant next argues that the Secretary erred in finding that he could perform his past relevant work. We have stated that the ALJ was correct in concluding that Bell did not have an impairment listed in Appendix 1 or an impairment equivalent to such

an impairment. Regulation 404.1520(e) provides, "If we cannot make a decision based on current activity or on medical facts alone, and you have a severe impairment(s), we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled." Dr. Rahaim's opinion was dated July 16, 1982. He wrote in reference to Bell: "He has been under my care since 1971 and has been permanently and totally disabled almost from the time I originally started treating Mr. Bell." This is belied by Bell's testimony if Dr. Rahaim's testimony is to be construed as a conclusion that Bell could not engage in substantial gainful activity. Bell stated that he left his work with Paragon Productions in March of 1982 but that it was his intention to return to Paragon later in August. He stated that Paragon "had decided to take a break because business was slow and I thought it would give me a good chance to rest because I had been extremely fatigued over the last few months." Bell testified that he went to his doctor in late April, had an examination, but when "[I] received his report back, he told me that I should have been receiving [social security] ever since 1967." He says that his doctor told him not to return to work, and that he had not sought any employment since that time.

The dissent errs in urging that Dr. Rahaim's conclusion that Bell is "totally disabled" and that "his condition will not improve and he will continue to suffer from severe disability" inescapably conflicts with the opinions of Drs. Anderson and Cobb that Bell can perform a full range of "sedentary work activities." Dr. Rahaim never discusses the subject of sedentary work activities and never discusses in what manner Bell's cardiac condition prevents him from performing his past type of light sedentary work.

 The regulation in 20 C.F.R. § 404.-1527 provides that although a claimant's physician may state he is "disabled" or "unable to work" the agency will neverthe-

less determine disability based upon the medical findings and other evidence. Dr. Rahaim's conclusory statement that Bell is "totally disabled" is not explained by his medical findings. We conclude that in this case the ALJ had good cause not to accord substantial weight to Dr. Rahaim's evidence in light of the conflicting medical evidence from the other two doctors.

### APPENDIX B

The applicable regulations, 20 C.F.R. § 4.01, pt. 404, subpt. P, app. 1, state that the claimant must have:

4.02 *Congestive heart failure (manifested by evidence of vascular congestion such as hepatomegaly, peripheral or pulmonary edema).* With:

A. Persistent congestive heart failure on clinical examination despite prescribed therapy; or

B. Persistent left ventricular enlargement and hypertrophy documented by both:

1. Extension of the cardiac shadow (left ventricle) to the vertebral column on a left lateral chest roentgenogram; and

2. ECG showing QRS duration less than 0.12 second with $S_{v1}$ plus $R_{v5}$ (or $R_{v6}$) of 35 mm. or greater *and* ST segment depressed more than 0.5 mm. *and* low, diphasic or inverted T waves in leads with tall R waves; or

C. Persistent "mitral" type heart involvement documents by left atrial enlargement shown by double shadow on PA chest roentgenogram (or characteristic distortion of barium-filled esophagus) and either:

1. ECG showing QRS duration less than 0.12 second with $S_{v1}$ plus $R_{v5}$ (or $R_{v6}$) of 35 mm. or greater *and* ST segment depressed more than 0.5 mm. *and* low, diphasic or inverted T waves in leads with tall R waves; or

2. ECG evidence or right ventricular hypertrophy with R wave of 5.0 mm. or greater in lead $V_1$ *and* progressive decrease in R/S amplitude from lead $V_1$ to $V_5$ or $V_6$; or

D. Cor pulmonale (non-acute) documented by both:

1. Right ventricular enlargement (or prominence of the right out-flow tract) on chest roentgenogram of fluoroscopy; and

2. ECG evidence of right ventricular hypertrophy with R wave of 5.0 mm. or greater in lead $V_1$ *and* progressive decrease in R/S amplitude from lead $V_1$ to $V_5$ or $V_6$.

4.03 *Hypertensive vascular disease.* Evaluate under 4.02 or 4.04 or under the criteria for the affected body system.

4.04 *Ischemic heart disease with chest pain of cardiac origin as described in 4.00 E . . . .*

. . . .

4.05 *Recurrent arrhythmias* (not due to digitalis toxicity) resulting in uncontrolled repeated episodes of cardiac syncope and documented by resting or ambulatory (Holter) electrocardiography.

[No Sections 4.06–4.08 in regulations.]

4.09 *Myocardiopathies, rheumatic or syphilitic heart disease.* Evaluate under the criteria in 4.02, 4.04, 4.05, or 11.04.

[No Section 4.10 in regulations.]

4.11 *Aneurysm of aorta or major branches* (demonstrated by roentgenographic evidence). . . .

. . . .

4.12 *Chronic venous insufficiency* of the lower extremity with incompetency or obstruction of the dep venous return, associated with superficial varicosities, extensive brawny edema, stasis dermatitis, recurrent or persistent ulceration which has not healed following at least 3 months of prescribed medical or surgical therapy.

4.13 *Arteriosclerosis obliterans or thrombo-angiitis.* . . .

JOHNSON, Circuit Judge, dissenting:

I cannot agree with the conclusion of the majority that the Administrative Law Judge (ALJ) gave proper legal weight to the opinion of Noah Bell's attending physician, Dr. Rahaim. The Court acknowl-

edges the well-established rule that an ALJ must accord substantial weight to the opinion of a claimant's treating physician unless good cause is shown to the contrary. *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir.1985) (per curiam). However, the majority finds no actual conflict among the medical diagnoses of the three doctors presenting opinions, and a divergence only "with respect to disability to work" that is "not sufficiently articulated in Bell's behalf to warrant a finding that Bell could not do a full range of sedentary work." The Court therefore discounts the opinion of Bell's treating physician with no further discussion of "good cause."

The majority's somewhat tortured analysis obscures a simple case. Bell clearly suffers from a debilitating heart ailment. Dr. Rahaim's conclusion that Bell is "totally disabled," and that "[h]is condition will not improve and he will continue to suffer from severe disability" seems to me a well-articulated and quite powerful expression of Bell's incapacity to work. Further, that conclusion inescapably conflicts with the opinions of Drs. Anderson and Cobb that Bell can perform a full range of "sedentary work activities."

Given such a conflict, we are charged by precedent and by common sense to weigh the conclusion of the physician who has treated Bell for eleven years over the views of two consulting doctors who actually examined Bell, respectively, once and not at all. "It is not only legally relevant but unquestionably logical that the opinions, diagnosis, and medical evidence of a treating physician whose familiarity with the patient's injuries, course of treatment, and responses over a considerable length of time, should be given considerable weight." *Id.* at 962, quoting *Smith v. Schweiker*, 646 F.2d 1075, 1081 (5th Cir.1981). Since the ALJ did not accord sufficient weight to Dr. Rahaim's opinion of Bell's "total disability," his decision was simply erroneous as a matter of law.