**Virginia D. BEECH, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. Civ.A. 99–0568–BH–L.**

United States District Court,
S.D. Alabama,
Southern Division.

June 20, 2000.

C. Robert Montgomery, Chatom, AL, for Plaintiff.

Patricia Nicole Beyer, U.S. Atty's Office, Mobile, Al, for Defendants.

### ORDER

HAND, Senior District Judge.

After due and proper consideration of all portions of this file deemed relevant to the issues raised, and a *de novo* determination of those portions of the recommendation to which objection is made, the recommendation of the Magistrate Judge made under 28 U.S.C. § 636(b)(1)(B) and dated this the 30th day of May, 2000 is **ADOPTED** as the opinion of this Court.

### REPORT AND RECOMMENDATION

LEE, United States Magistrate Judge.

The Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits.

This action was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Oral argument was held on May 11, 2000. Upon consideration of the administrative record, the memoranda of the parties and the oral argument, it is recommended that the decision of the Commissioner be affirmed.

### I. *Issues on Appeal.*

The Plaintiff raised the following arguments in her Statement of Issues.

(1) The ALJ failed to apply Rule 201.17 of the Medical–Vocational Guidelines (the "Grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2.

(2) The medical evidence does not support the ALJ's finding that she could return to her past relevant work.

(3) The ALJ failed to properly evaluate the Plaintiff's subjective testimony.

(4) The ALJ failed to properly evaluate her impairments in combination.

Two additional issues were raised at oral argument:

(5) The ALJ improperly found that the Plaintiff did not meet or equal a Listing.

(6) The new evidence submitted to the Appeals Council but not before the ALJ shows that the ALJ improperly evaluated the medical evidence before him.

### II. *Background Facts.*

Plaintiff was born on September 17, 1943 and was fifty-three years old at the time of the administrative hearing on June 12, 1997 (Tr. 28–29). She is a college graduate and has past relevant work as an elementary school teacher (Tr. 30–32). Plaintiff retired from teaching in May 1996 (Tr. 31–32). She alleges disabling conditions of vision loss in her left eye resulting from surgery in February 1991 and June 1991 to remove a benign brain tumor (Tr. 33–35). In April 1997, her left eyelids were partially sewn together to prevent infection (Tr. 34). She testified that the vision problem in her left eye caused double vision in her right eye which caused cars to appear in strange positions when she drove (Tr 33.) She testified that her husband did the household paperwork (Tr 35). In regard to her work as a school teacher, she testified that her vision problem made it difficult to teach and specifically caused difficulty with paperwork, report cards, counting

money for the lunchroom, and forms (Tr 35).

In her Daily Activities Questionnaire, the Plaintiff stated that she wakes each day at 4:00 a.m. because she is slower with morning activities due to her poor vision. She stated that she leaves early to drive to school because driving is difficult and that her daughter drove her to school until her daughter graduated. She stated that she had difficulty with any activity that requires good vision such as buttons and putting the ointment in her eye every hour. She stated that she cooks and cares for her eighty-two year old mother who lives with her and shops with help from her husband. She also stated that her vision prevented any hobbies and that reading had been an enjoyment but was now a chore. She stated that she taught Sunday School, attended church regularly and went to the grocery store about once a week, but that her husband did the driving. The Plaintiff stated that she had trouble finishing any task that required vision, such as reading, sewing, cooking, or anything with directions. She stated that teaching was too dependent upon her vision, that she feared making a mistake which could hurt someone and that the responsibility and liability forced her to retire. She also stated that she had pain in her eye but did not take medication because she was afraid it would cause her to be sleepy and interfere with her work (Tr. 77–80).

The Plaintiff applied for disability insurance benefits on June 5, 1996 alleging onset of disability of May 1996 (Tr. 57–58). Her application was denied initially (Tr. 64–71) and on reconsideration (Tr. 81–86). The hearing before the Administrative Law Judge was held on June 12, 1997 (Tr. 26–32). The ALJ entered a decision on December 15, 1997 (Tr. 11–17) wherein the Plaintiff was found able to return to her past relevant work and, therefore, not disabled (Tr. 17). The ALJ found that the Plaintiff had limited vision in her left eye and cranial nerve palsies which were "se-vere" impairments; however, these impairments did not meet or equal a listed impairment (Tr. 15). On April 16, 1999, the Appeals Council denied the Plaintiff's request for review (Tr. 5–7). Therefore, the hearing decision became the final decision of the Commissioner of Social Security.

### III. *ALJ Findings*

The ALJ made the following findings, in pertinent part, in regard to Plaintiff's claims (Tr. 17):

3. The medical evidence establishes that the claimant has no exertional limitations but has severely limited vision in her left eye and cranial nerve palsies, which are "severe" impairments, but she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's subjective complaints are disproportionate to the medical evidence and are not fully credible, considering both medical and "other" evidence (20 CFR 404.1529).

5. The claimant has the residual functional capacity to perform the requirements of work at all exertional levels, but she has severely limited vision in her left eye.

6. The claimant is able to return to her past relevant work as a school teacher.

7. The claimant was not under a "disability" as defined in the Social Security Act and Regulations, at any time through the date of this decision (20 CFR 404.1520(f)).

### IV. *Discussion*

#### A. *Standard of Review.*

In reviewing claims brought under the Act, this court's role is a limited one. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Se-*

*well v. Bowen*, 792 F.2d 1065, 1067 (11th Cir.1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. *Brown v. Sullivan*, 921 F.2d 1233, 1235 (11th Cir.1991), *citing Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983). Substantial evidence is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 390, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Bloodsworth*, 703 F.2d at 1239. The Secretary's decision must be affirmed if it is supported by substantial evidence even when a court finds that the preponderance of the evidence is against the decision of the Secretary. *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427 (1971); *Bloodsworth*, 703 F.2d at 1239. "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Further, it has been held that the Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir.1991). This Court's review of the Commissioner's application of legal principles is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.1987).

### B. *Statement of the Law*

An individual who files an application for Social Security disability benefits must prove that she is disabled. *See* 20 C.F.R. § 416.912 (1998). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven that she is disabled. *See* 20 C.F.R. § 416.920. At the first step, the claimant must prove that she has not engaged in substantial gainful activity. At the second step, she must prove that she has a severe impairment or combination of impairments. If, at the third step, she proves that her impairment or combination of impairments meets or equals a listed impairment, she is automatically found disabled regardless of age, education, or work experience. If she cannot prevail at the third step, she must proceed to the fourth step where she must prove that she is unable to perform her past relevant work. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir.1986). In evaluating whether plaintiff has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. *Id.*, at 1005. Once plaintiff meets this burden, it becomes the Commissioner's burden to prove at the fifth step that plaintiff is capable of engaging in another kind of substantial gainful employment which exists in the national economy, given age, education, and work history. *Sryock v. Heckler*, 764 F.2d 834 (11th Cir.1985). If the Commissioner can demonstrate that there are jobs the claimant can perform, the claimant must prove she is unable to perform those jobs in order to be found disabled. *Jones v. Apfel* 190 F.3d 1224, 1228 (11th Cir. 1999); *Powell o/b/o Powell v. Heckler*, 773 F.2d 1572, 1575 (11th Cir.1985); *Ambers v. Heckler*, 736 F.2d 1467, 1469 (11th Cir. 1984). *See also Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir.1987), citing *Francis v. Heckler*, 749 F.2d 1562, 1564 (11th Cir. 1985).

### C. *Medical Evidence*

On July 15, 1996, a disability determination and transmittal was signed by disability examiner Carolyn F. Cramer and William H. Tucker, M.D. Plaintiff's primary diagnosis was noted as "left anesthetic cornea with multiple cranial nerve palsies with normal right eye." Dr. Tucker reviewed the reports received from Troy H. Middleton, III, M.D. neurologist on June 14, 1996 and Saunders L. Hupp, M.D.,

neuro-ophthalmologist on July 12, 1996. The Social Security Administration, after reviewing Plaintiff's medical records and considering Plaintiff's statements in regard to how her condition affected her ability to work, determined that the Plaintiff did not have a "condition severe enough to be considered disabled" (Tr. 38–39).

On September 23, 1996, a reconsideration disability determination and transmittal was signed by disability examiner Mary E. Smith and Robert O. Harris, M.D. Plaintiff's primary diagnosis was noted as "multiple cranial nerve palsies" with a secondary diagnosis of "left sided Meningioma by history." The same medical evidence was considered and no new reports were submitted. The Social Security Administration found that her medical condition did not significantly affect her ability to carry out routine activities or to work. (Tr. 40–41).

On January 17, 1991, Troy H. Middleton, M.D., neurologist, wrote to Eugene Quindlen, referring physician, that after examination and further testing, including an MRI, he suspected a meningioma and recommended surgery (Tr. 111). The surgery which partially removed the tumor was performed on February 14, 1991 and the Plaintiff was discharged on February 24, 1991 (Tr. 92, 95–96). Her prognosis was noted as "fair to good" (Tr. 92).

In March 1991, she was referred by Dr. Middleton to William Friedman, M.D., neurologist, in Gainesville, Florida for possible treatment with stereotactic radiation to the remaining tumor (Tr. 100–101). The Plaintiff returned to Dr. Middleton on April 3, 1991 and related that she had been told she was not a candidate for Dr. Friedman's procedure. Dr. Middleton noted that she would "probably go with conventional radiation" (Tr. 102). The Plaintiff indicated that she wanted to return to work and Dr. Middleton concurred (Tr. 102).

On April 23, 1991, Dr. Middleton wrote a letter of referral to Ossama Al–Mefty, M.D., neurosurgeon at Loyola University Medical Center in Chicago, Il, wherein Dr. Middleton suggested further surgery by Dr. Al–Mefty to remove more of the tumor (Tr. 98–99). The second surgery was performed on June 5, 1991 and the Plaintiff was discharged on June 12, 1991 (Tr. 129).

In July of 1991, the Plaintiff returned to Dr. Middleton for a follow-up visit. Dr. Middleton wrote Dr. Al–Mefty that her neurological exam showed cranial nerve palsies at III, IV and VI but no other abnormalities (Tr 127, 128). In August 1991, Dr. Middleton wrote Dr. Al–Mefty that her III nerve palsy was resolving, that she had mild corneal insensitivity and a IV nerve palsy on the left.

On December 4, 1991, the Plaintiff returned to Dr. Middleton and he noted that she was doing very well. He also noted that she had a "mild third nerve," "temple sunken a little bit," "little VI sensory disturbance," and he treated her for exposure to keratitis or conjunctivitis (Tr. 123). On this same date, he wrote Dr. Al–Mefty and stated that the Plaintiff was followed by a neuro-ophthalmologist and that she had "an occasional exposure conjunctivitis on the left" and "mild diplopia on far lateral gaze to the left and far upward gaze" (Tr 122).

On May 13, 1992, Dr. Middleton examined the Plaintiff. She complained of increased diplopia especially late in the day and he noted her statement that she had been doing a lot of paperwork lately. He also noted mild left VI nerve palsy and referred to it as "baseline." He stated that he wanted to see her after the end of the school term and anticipated that the "less strenuous environment" would improve her vision (Tr. 121).

On June 16, 1992, Dr. Middleton wrote Dr. Al–Mefty that the Plaintiff's diplopia had worsened some but that she had no headaches or other problems, and that she had a "sizeable recurrence" of the tumor in her left sinus cavity. He asked Dr. Al–Mefty to review her tests (Tr. 117).

On August 27, 1993, Dr. Middleton wrote Dr. Hupp that the Plaintiff would return to him because her diplopia was worsening. He also wrote that there had been no significant change in the size of her brain tumor (Tr. 116).

On January 4, 1995, Dr. Middleton noted that there had been "no real change in her last visit" and that her MRI scan looked good (Tr. 114). The Plaintiff had MRI evaluations on June 8, 1992 (Tr 120), December 29, 1992 (Tr. 118), June 29, 1993 (Tr. 119), December 29, 1993 (Tr, 115), and January 4, 1995 (Tr. 113).

On February 28, 1996, by letter, Dr. Hupp informed Dr. Middleton of the following:

> Ms. Beech continues to have the same findings, with a partial left third nerve palsy, partial left sixth nerve palsy, and an almost total left fifth nerve palsy. Her cornea seems to be tolerating the anesthesia with copious use of ocular lubricants. My examination has essentially not changed from my prior examination last March. I provided Ms. Beech with a new pair of glasses which will mainly have an effect of improving her right eye vision, which remains normal. We will put a balance lens in front of Ms. Beech's left eye and she will continue to use her ocular lubricants.

(Tr. 131).

On April 7, 1997, by letter, Dr. Hupp informed the Plaintiff's attorney that he had been treating the Plaintiff since December 27, 1990 and that her condition was chronic and progressive. He also noted as follows:

> She has almost no good functional central vision of her left eye, although she can read the Snellen chart at a level of approximately 20/70. Her peripheral vision is normal in both eyes. She has to chronically occlude her left eye so that she does not have double vision. Further therapy may be required ·in the form of an eyelid closing operation to stop the progression of scarring of the cornea of her left eye.

(Tr. 130–131).

The Plaintiff testified that in April of 1997, a cornea specialist, Dr. Murphy sewed together her left eyelids to prevent infection and possible loss of her eye (Tr. 34).

After her hearing in June 1997, the ALJ referred the Plaintiff to Edward C. Baranano, M.D. On July 14, 1997, he noted that her right eye with best correction had $20/20$ vision, but that he could not evaluate her left eye because the eyelids had been sewn together. He diagnosed her left eye as legally blind from intracranial meningioma. He also diagnosed "left eye central corneal opacity from exposure keratitis[,] left eye tarsorraphe; neurotrophic ulcer scar." He also noted that her condition was progressive and guarded, and that she was restricted to "monocular function" (Tr 136).

On February 4, 1998, after the ALJ had rendered his opinion, Dr. Hupp wrote to the Plaintiff's attorney as follows:

> [Ms. Beech] has been left with a left eye that has really no functional vision, but has enough vision to cause a significant amount of visual confusion and disability. Although her central acuity in that eye is $20/20$, it is really not useful vision, and it is more near a functional level of 20/200. The eye does not move properly because of the multiple cranial nerve palsies. Also, the sensation of the eye which is critical to its health is very diminished. This lack of sensation has caused her cornea to be permanently scarred and in order to protect it from acquiring a serious infection, a surgical procedure to partially sew her eyelids together, called a tarsorrhaphy, was required. Having had this tarsorrhaphy, the cornea has been prevented from getting infected, but it does not allow the eye to see any better.

> Ms. Beech has constant visual confusion from double vision, and there is really

no good solution with glasses or prisms. Ms. Beech also has significant discomfort from the abnormal nerve supply to that area, making it impossible for her to continue in her vocation as a teacher. The location of this brain tumor is very difficult and Ms. Beech's condition will be progressive.

(Tr. 138). This letter was before the Appeals Council but was not before the ALJ.

### D. *Plaintiff's Argument*

■ Plaintiff argues that she is an individual approaching advanced age (age fifty-six), legally blind in her left eye and that Rule 201.17 of the Medical–Vocational Guidelines (the "Grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, applies which directs a finding that she is disabled. She argues that the ALJ erroneously applied Rule 202.16 and found, within the framework of the Grid, that the Plaintiff could return to her past relevant work.

Rule 201.17 applies to a younger individual between the ages of eighteen and forty-nine who is illiterate or unable to communicate in English, unskilled or with no previous work experience, and limited by exertional impairments to sedentary work. Review of the record shows that the Plaintiff does not meet these qualifications. Also, the ALJ found that the Plaintiff had no exertional impairment and she conceded same in Paragraph One of her Statement of the Issues. The undersigned finds that the ALJ did not err by failing to apply this Rule.

Additionally, Rule 202.16 applies to a younger individual limited to light work who is illiterate or unable to communicate in English and unskilled. 20 C.F.R. Pt. 404, Subpt. P, App. 2. Review of the ALJ's decision does not indicate that this Rule was applied.

■ Plaintiff next argues that the ALJ erred in finding that she has the residual functional capacity to return to her past relevant work (Tr. 15, 17). The Plaintiff argues that the medical evidence does not support the ALJ's decision. In support of

this argument, the Plaintiff points out that she is blind in her left eye and must occlude her left eye to prevent double vision in her right eye.

The ALJ found that she had the "capacity to perform work at all exertional levels but that she cannot see out of her left eye" and that her cranial nerve palsies did not appear to cause any functional limitation (Tr. 15). In his summary of the opinion received from Dr. Hupp, the ALJ noted that the Plaintiff "has to chronically occlude her left eye to avoid double vision" and that her condition was progressive (Tr 14). In his summary of the records received from Dr. Middleton, he noted that she returned to her job as a school teacher in September of 1991 and worked until May 1996 which is the alleged disability onset date (Tr. 13, 14). In reaching the decision that she can return to her past relevant work, the ALJ considered "the medical evidence, including subjective complaints, and assessment of the claimant's residual functional capacity" (Tr. 15). The ALJ found as follows:

> The undersigned finds that the claimant has the capacity to perform work at all exertional levels but she cannot see out of her left eye. There is ample evidence that the claimant's left eye is damaged and she is essentially blind in that eye. Although the claimant has several cranial nerve palsies, these do not appear to cause any functional limitations. Neither the claimant's treating physician nor the consulting physician have suggested that these palsies reduce the claimant's capacity to perform work. At the hearing, the claimant did not allege any problems other than difficulty with vision.

(Tr. 15). As additional support of this finding, the ALJ considered the opinions of the State Agency consultants as required by Social Security Ruling 96–6p and noted that the agency consultants found that her "condition does not significantly affect the

claimant's ability to carry out most routine activities" (Tr. 15).

In regard to her ability to return to her past relevant work the ALJ found as follows:

> The claimant has worked for many years as a first grade teacher. Considering the residual functional capacity set out above, the undersigned concludes that the claimant can return to her past relevant work as a school teacher. This work clearly requires the ability to see. Although the claimant is legally blind in her left eye, she still has normal use of her right eye and therefore can still perform her past relevant work.

(Tr. 17).

■ The undersigned finds that the decision of the ALJ that the Plaintiff can return to her past relevant work is supported by substantial evidence and proper application of the law. The determination of residual functional capacity is within the authority of the ALJ and the assessment should be based upon all of the relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1546; See *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir.1997) (citing 20 C.F.R. § 404.1545(a)). The ALJ specifically referenced the medical evidence and the testimony of the Plaintiff upon which he relied. He properly made specific findings in regard to the limitations of function resulting from her medically established impairments and determined that she had the residual functional capacity to perform her past relevant work. The ALJ noted that neither her treating physician, the consulting physician nor the State Agency physicians indicated that she could not return to her past relevant work.

■ The Plaintiff argues that her subjective testimony was not properly evaluated by the ALJ. She asserts that her testimony is supported by the evidence and should be viewed in the light most favorable to the Plaintiff. The ALJ noted that her subjective complaints must be consid-

ered "in light of Section 404.1529 of the Regulations and Social Security Ruling 96–7p" and that as required by this section, both medical and other evidence was considered (Tr. 15).

Social Security Ruling 96–7p sets forth that the Regulation requires a two-step process for evaluating subjective symptoms: First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment or impairments established by medically acceptable clinical and laboratory diagnostic techniques which could reasonably be expected to produce the individual's symptoms; Second, if such underlying physical or mental impairment or impairments have been found, the ALJ must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. To do so, the ALJ must make a finding in regard to the credibility of the individual's testimony and statements based upon his evaluation of the entire case record. Any allegation of diminishment of the Plaintiff's capacity for basic work activities must be support by the objective medical evidence and other evidence in the case record. Social Security Ruling 96–7p. The ALJ must also consider the following:

> 1. The individual's daily activities; 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or

sleeping on a board); and 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Social Security Ruling 96–7p.

The ALJ made a specific finding in regard to her vision loss in her left eye and cranial nerve palsies and evaluated her medical evidence including that of her treating physicians (Tr. 14, 16). Therefore, he met the first prong of the Ruling. He then noted that if a Plaintiff alleges symptomatology in excess of that which could reasonably be expected to result from the diagnosis, further analysis must be made (Tr. 16). The ALJ continued his analysis in regard to the second prong of the Ruling and found as follows:

> The claimant testified that she worked until May 1996, when she retired because she had difficulty driving and her eyes were fatigued. She stated she receives regular retirement benefits, not disability benefits. The undersigned is aware that the claimant has essentially lost her vision in her left eye. There is no doubt that this is a significant loss to her. While the cranial nerve palsies do not appear to cause significant limitations, they undoubtedly present a personal challenge. The undersigned is aware that the loss of vision in the claimant's eye is a progressive condition, as Dr. Hupp noted (Exhibit 5F). However, there is no evidence that the claimant's right eye is in any way limited. With the use of corrective lenses, she has ²⁰⁄₂₀ vision in her eye and is functional in all other respects. The undersigned has considered all of the evidence, including the testimony obtained at the hearing. The undersigned finds that the claimant's subjective complaints are not fully credible based on the clinical and medical evidence.

(Tr. 16).

The undersigned finds no error in the ALJ's analysis of the Plaintiff's subjective complaints nor in his application of the analysis as set forth in Social Security Ruling 96–7p and in 20 C.F.R. § 404.1529.

■ The Plaintiff next argues that the ALJ failed to properly evaluate the effect of her combination of impairments on her ability to work. She argues that the ALJ failed to make specific and well-articulated findings as to the effect not just the existence of the impairments in combination and the impact on her ability to work. The Plaintiff asserts that she suffers from a residual tumor, multiple cranial nerve palsies, and blindness in her left eye.

42 U.S.C. § 423(d)(2)(B) (Supp.1999) requires as follows:

> (B) In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity. If the Commissioner of Social Security does find a medically severe combination of impairments, the combined impact of the impairments shall be considered throughout the disability determination process.

■ The ALJ's evaluation must consider the combination of the Plaintiff's impairments in regard to her ability to perform her past work or other work. *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990). If a claimant has alleged several impairments, the ALJ must consider the impairments in combination, and determine whether their combined effect renders the claimant disabled. *Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir.1985). It has been found that the ALJ meets this requirement by expressly finding "the claimant not to suffer any impairment or combination of impairments" sufficiently severe to prevent participation in substantial gainful activity. *Wheeler v. Heckler*,

784 F.2d 1073, 1076 (11th Cir.1986). However, the Eleventh Circuit Court of Appeals has also found that "[i]t is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled." *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir.1984); *see also Reeves v. Heckler*, 734 F.2d 519 (11th Cir.1984); *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir.1982).

The ALJ stated that in reaching his "conclusions concerning the claimant's residual functional capacity, the undersigned considered the effect of each impairment individually, [and] the combined effect of all the impairments" (Tr 15). Additionally, the ALJ discussed the Plaintiff's medical evidence, specifically her vision problems and cranial nerve palsies, and found that while her left eye was essentially blind thus resulting in a loss of function in that eye, her right eye had normal vision, when she occluded her left eye, and that no physician had suggested that her palsies caused any functional limitation (Tr. 14, 15, 16). The evidence in the administrative record, combined with the ALJ's specific findings, indicate that the ALJ's decision that the Plaintiff was not disabled as a result of the combination of her impairments was based upon substantial evidence and proper application of the law.

 At oral argument, the Plaintiff further alleged that the ALJ erred by failing to find that the Plaintiff's vision loss created a loss of function which was equivalent to a listed impairment under 20 C.F.R. Pt. 404, Subpt. P, App. 1, the Listings of Impairments[1]. The ALJ found that her limited vision in her left eye and cranial nerve palsies were severe impairments but that they did not meet or equal the requirements for any impairment in the Listing of Impairments (Tr. 15). The ALJ based this decision upon the opinions of the State Agency medical consultants who evaluated the Plaintiff at the initial and reconsideration levels of the administrative process (Tr. 15).

In discussing the purpose and application of the Listing of Impairments, the Eleventh Circuit has provided the following guidance:

The Listings include medical criteria for specified disorders of thirteen major body systems. These impairments are so severe that an individual who has a listed impairment is generally considered unable to work based upon medical considerations alone. (Citation omitted) A claimant may prove that he is disabled by either (1) meeting the Listings or (2) equaling the Listings. In order to meet a Listing, the claimant must (1) have a diagnosed condition that is included in the Listing and (2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable Listing and the duration requirement. A diagnosis alone is insufficient. (Citation omitted) In order to equal a Listing, the medical findings must be at least equal in severity and duration to the listed findings.

*Wilkinson on Behalf of Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir.1987); *see also Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir.1986) ("when a claimant contends that he has an impairment meeting the listed impairments ..., he must present specific medical findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which described how the impairment has such equivalency."); *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir.1991) ("diagnosis of a listed impairment equaled.

---

1. When asked by the court, the plaintiff was unable to identify which listing she alleges her impairment equaled.

impairment is not alone sufficient; the record must contain corroborative medical evidence supported by clinical and laboratory findings.")

Also the United States Supreme Court has found:

> Each impairment [in the Listings] is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.

*Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 891–92, 107 L.Ed.2d 967 (1990) (emphasis in original). Plaintiff has the burden of producing medical evidence that establishes all of the required medical findings. *See Bowen v. Yuckert,* 482 U.S. 137, 146 & n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

The Plaintiff fails to allege which Listing she meet or equals or what medical evidence was presented as to the specific medical criteria of the Listing. The Plaintiff has the burden of proving that her impairment or combination of impairments meets or equals a listed impairment, but without the Plaintiff identifying which listing the Plaintiff purportedly equals, the Court can only surmise, for purposes of review, which listing the Plaintiff contends to equal.

■ However, a review of the Listings which involve vision and the medical evidence presented indicates that the Plaintiff does not meet or equal any listed impairment. Section 2.00 Special Senses and Speech, A. Opthalmology, and Sections 2.01 through 2.06, of 20 C.F.R. Pt. 404, Subpt. P., App. 2, relate to the listed vision impairments. Each of these listings state that the vision of the better eye is used for determining whether a disability exists. In other words, the impairment must affect both eyes. The Plaintiff's medical records as presented to the ALJ show that she has normal vision in her right eye with corrective lenses and that her diplopia is relieved by occlusion of her left eye. Therefore, the Plaintiff has failed in her burden to show she meets any listing.

■ The Plaintiff also argued at oral argument that the letter from Dr. Hupp dated February 1998 constitutes new evidence which should support a remand of the case for proper consideration of the new evidence pursuant to *Keeton v. Department of Health and Human Services,* 21 F.3d 1064 (11th Cir.1994) and *Falge v. Apfel,* 150 F.3d 1320 (11th Cir.1998). The Plaintiff has not argued that the Appeals Council failed to properly consider the new evidence submitted and thus, erred in denying review. She has argued that this letter illustrates that the ALJ erred in properly evaluating her medical evidence. However, an ALJ can not be found in error for failing to evaluate information that was not before him. When the Appeals Council denies review, the Court "will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge* at 1323.

■ However, since the Plaintiff has relied upon the new evidence in support of her argument, the undersigned will address the new evidence. *Cherry v. Heckler,* 760 F.2d 1186, 1193–1194 (11th Cir. 1985), provides that, in reviewing the evidence, a reviewing court is limited to the certified record containing all of the evidence formally considered by the Commissioner. Therefore, the undersigned may consider evidence submitted only to the Appeals Council. "When the Appeals Council refuses to consider new evidence submitted to it and denies review, that decision [the denial of review] is . . . subject to judicial review because it amounts to an error of law." *Keeton v. Department of Health and Human Services,* 21 F.3d 1064, 1066 (11th Cir.1994).

■ In order to review the Appeals Council denial of review, the undersigned

must make the following inquiry in regard to the new evidence submitted. For remand, "the claimant must establish that (1) there is new, noncumulative evidence, (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level." 42 U.S.C. § 405(g); *Cannon v. Bowen,* 858 F.2d 1541, 1546 (11th Cir.1988); *Caulder v. Bowen,* 791 F.2d 872, 877 (11th Cir.1986); *Cherry,* 760 F.2d at 1192–93 (11th Cir. 1985). Further, the new evidence must relate to the time period before the ALJ. *See* 20 C.F.R. § 416.1470(b) ("Appeals Council shall evaluate the entire record including the new and material evidence submitted to it if it relates to the period on or before the date of the administrative law judge hearing decision.")

██ Upon review of the letter submitted by Dr. Hupp, the undersigned finds that it does not meet the test for new evidence as set forth herein (Tr. 138). The letter is new, in that it did not exist at the time of the administrative hearing, and arguably non-cumulative in that Dr. Hupp now asserts an opinion in regard to the Plaintiff's ability to perform her past relevant work and other impairments which he did not assert in the prior letters before the ALJ.

However, the information is not material, in that it does not create a reasonable possibility that the administrative outcome would be changed. Dr. Hupp's 1998 letter provides an ultimate opinion of disability but it is not supported by any new or additional medical evidence. The ALJ discussed Dr. Hupp's previous letters (Tr. 14) and did not discount his findings, but, in fact, accepted them and determined that "claimant can not see out of her left eye." (Tr. 15). A medical opinion that the Plaintiff is disabled or unable to work is not entitled to any special weight because that issue is reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(e) (1996). (We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.) *See also Wheeler v. Heckler* 784 F.2d 1073, 1075 (11th Cir.1986) (The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments). The Eleventh Circuit has held that a treating physician's opinion regarding disability may be disregarded by the ALJ if it is unsupported by medical evidence or is wholly conclusory. *Edwards v. Sullivan,* 937 F.2d 580 (11th Cir.1991) (*citing Schnorr v. Bowen,* 816 F.2d 578, 582 (11th Cir.1987)).

However, the Plaintiff has also failed to establish good cause for failing to submit the February 1998 letter. Good cause is not established simply because the letter did not exist at the time of the administrative hearing. The Eleventh Circuit has found that the good cause requirement was designed to prevent claimants from seeking "after-acquired evidence, and then us[ing] such evidence as an unsanctioned 'back-door' means of appeal". *Milano v. Bowen,* 809 F.2d 763, 767 (11th Cir.1987) (quoting *Szubak v. Secretary,* 745 F.2d 831, 834 (3d Cir.1984)). Upon review of the letter, which was obtained shortly after the Plaintiff received her unfavorable decision dated December 15, 1997, the undersigned finds that good cause for failing to present the opinion of Dr. Hupp does not exist. In *Brown v. Schweiker,* 557 F.Supp. 190, 192 (M.D.Fla.1983) the Court found that to satisfy the good cause standard, the plaintiff must "demonstrate some justification for the failure to acquire and present such evidence to the Secretary." Plaintiff` has not given any reason for her failure to

get an ultimate opinion from Dr. Hupp prior to the ALJ's decision. Dr. Hupp had treated the Plaintiff since 1990 and treated her after her retirement from teaching. His opinion in regard to her ability to teach could have been obtained at any time prior to the hearing before the ALJ. Also, two opinion letters from Dr. Hupp, dated April 1997 and February 1996, were submitted to the ALJ as herein discussed. Based upon the foregoing, the undersigned finds that the Appeals Council properly considered the new evidence presented from Dr. Hupp and committed no error in denying review.

### V. Conclusion

For the reasons set forth, and upon consideration of the administrative record, the hearing decision, the memoranda of the parties, and oral argument, it is recommended that the decision of the Commissioner denying the Plaintiff's claim for disability insurance benefits be affirmed.

The attached sheet contains important information regarding objections to this *report and recommendation.*

MAGISTRATE JUDGE'S EXPLANA-TION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOL-LOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. **Objection.** Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir.1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) *(en banc )*. The procedure for challenging the findings and recommendations of the magistrate judge

is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Transcript (applicable where proceedings tape recorded).** Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

May 30, 2000.